CITIZENS FOR PROTECTION OF MARRIAGE v
BOARD OF STATE CANVASSERS

Docket No. 257542. Submitted September 1, 2004, at Lansing. Decided
September 3, 2004, at 9:00 A.M.

Citizens for Protection of Marriage (CPM) brought an original
mandamus action in the Court of Appeals, seeking an order
compelling the Board of State Canvassers to declare an initiative
petition that would amend the Constitution to be sufficient and
certify it for inclusion on the ballot for the general election on
November 2, 2004. The proposed amendment would provide that
a marriage between a man and a woman "shall be the only
agreement recognized as a marriage or similar union for any
purpose." CPM initiated the action after the board failed to certify
the petition because of a concern over whether it was lawful and
constitutional, and also because the board failed to approve a
statement of purpose drafted by the Director of Elections because
of a concern regarding the specificity of the language used.

The Court of Appeals *held*:

1. The board, being an "agency" as defined by the Adminis-
trative Procedures Act, MCL 24.203(2), had only the powers
vested in it by the Legislature, in statutes, or by the Constitution.
MCL 168.476 limits the board's authority and duties with respect
to a petition that proposes a constitutional amendment to deter-
mining whether the form of the petition substantially complies
with statutory requirements and whether there are sufficient
valid signatures to warrant certification. In this matter, there is
no dispute that the board approved the form of the petition and
determined that there were sufficient valid signatures to certify
the petition. Therefore, the board was obligated to certify the
petition. In addition, the board erred in considering the merits of
the proposal because it had no authority to do so.

2. The Director of Elections has the primary authority for
preparing a statement of purpose that adequately describes a
proposed constitutional amendment by using words that have a
common, everyday meaning to the general public, and that does
not create prejudice for or against the proposal. Const 1963, art 12,
§ 2; MCL 168.32. MCL 168.32 and MCL 168.474 limit the

board's authority to either approving or disapproving a statement of purpose prepared by the Director of Elections. Because the statement of purpose, in this case, was written in language as required by the Constitution and statute, the board should have approved it. However, there will not be a remand with direction to approve the description because there is no reason to believe that the board will overcome a deadlock with respect to the statement of purpose. Therefore, the Secretary of State is directed to take all necessary action to place the proposal on the general ballot using the Director of Elections' proposed ballot language.

Mandamus granted.

ELECTIONS — BOARD OF STATE CANVASSERS — INITIATIVE PETITIONS — CONSTITUTIONAL AMENDMENTS.

The authority and duties of Board of State Canvassers with respect to an initiative petition that proposes a constitutional amendment are limited to determining whether the form of the petition meets statutory requirements and whether there are sufficient valid signatures to warrant certification of the proposal (MCL 168.32, 168.474).

*Foster, Swift, Collins & Smith, P.C.* (by *Eric E. Doster*), for Citizens for Protection of Marriage.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon* and *Heather S. Meingast*, Assistant Attorneys General, for the Board of State Canvassers and the Secretary of State.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Michael J. Hodge* and *Robert A. LeFevre*), for Coalition for a Fair Michigan.

Before: O'CONNELL, P.J., and WHITBECK, C.J., and OWENS, J.

PER CURIAM.

### I. OVERVIEW

Plaintiff Citizens for Protection of Marriage (CPM) filed a complaint for mandamus seeking an order of this

Court compelling the Board of State Canvassers (Board) to declare CPM's petition sufficient and certify the petition for inclusion in the November 2, 2004, general election. We grant mandamus and retain jurisdiction.

## II. BASIC FACTS AND PROCEDURAL HISTORY

On July 5, 2004, CPM filed an initiative petition to amend the Michigan Constitution to include a new subsection to article 1. The proposed amendment states in its entirety: "To secure and preserve marriage for our society and for future generations of children, the union of one man and one woman in marriage shall be the only agreement recognized as a marriage or similar union for any purpose." There is no dispute that CPM collected 500,000 signatures in support of the petition, of which only a small percentage (approximately seven percent) were determined to be invalid. The Secretary of State, through the Director of Elections, estimated that there were 462,243 valid signatures on the petition. The number of valid signatures required is 317,757.

At its meeting on August 23, 2004, the Board discussed the proposal, after which two members declined to certify the proposal on the basis of their conclusion that it was unlawful and unconstitutional. There was no dispute that the Board had previously approved the proposal as to the form of the petition, although one member questioned whether that meeting complied with the Open Meetings Act, MCL 15.261 *et seq*. There was also no dispute that there was a sufficient number of signatures in support of the proposal. Despite this, the Board deadlocked on whether the petition was sufficient. CPM filed this complaint for mandamus relief on August 26, 2004.

The Board again met on August 27, 2004, to consider the ballot language for the proposal if this Court were to order the proposal certified. Under the statutory scheme, the Director of Elections is charged with drafting a statement of purpose of less than one hundred words that will appear on the ballot above the language of the proposal. Const 1963, art 12, § 2; MCL 168.32; MCL 168.474. The statement of purpose for the proposal must "consist of a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal." MCL 168.474. See also MCL 168.485, which provides in part:

> The question shall be worded so as to apprise the voters of the subject matter of the proposal or issue, but need not be legally precise. The question shall be clearly written using words that have a common everyday meaning to the general public. The language used shall not create a prejudice for or against the issue or proposal.

The preparing of a statement of purpose is the duty of the Director of Elections with the approval of the Board. MCL 168.474. In this case, the statement of purpose that the Director of Elections prepared and proposed read:

> A PROPOSAL TO AMEND THE STATE CONSTITUTION TO SPECIFY WHAT CAN BE RECOGNIZED AS A "MARRIAGE OR SIMILAR UNION" FOR ANY PURPOSE.
>
> The proposal would amend the state constitution to provide that "the union of one man and one woman in marriage shall be the only agreement recognized as a marriage or similar union for any purpose."
>
> Should this proposal be adopted?
> Yes [ ]
> No [ ]

According to the transcript of the Board's August 27, 2004, meeting, the Board again split two to two on whether to approve the ballot language proposed by the Director of Elections. The two Board members who voted against the Director of Elections' proposed ballot language expressed concern that the description of the proposal did not reflect the fact that it could be interpreted to prohibit the recognition of existing or future domestic partnerships between a man and a woman or between a same-sex couple, or to prohibit health insurers from providing a plan allowing for benefits to unmarried couples, either opposite-sex or same-sex. An assistant attorney general, acting as counsel for the Board, suggested that speculation regarding the ultimate interpretation that courts might place on the proposal, and attempts to define those effects in a ballot summary, would be "fraught with difficulty for the simple reason that by listing some, you omit others." Because the Board will apparently not be able to come to an agreement regarding the statement of purpose, CPM has asked this Court to order the Board to certify the petition and approve the proposed ballot language. On August 31, 2004, the Court granted a motion to intervene brought by the Coalition for a Fair Michigan.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to entertain a mandamus action against a state officer. MCR 7.203(C)(2); *Comm for Constitutional Reform v Secretary of State*, 425 Mich 336, 338 n 2; 389 NW2d 430 (1986); see also MCL 600.4401 (allowing a party to commence a mandamus action in the Court of Appeals). Whether the defendant had a clear legal duty to perform and whether the plaintiff had a clear legal right to the performance of

that duty are questions of law that we review de novo. See *In re MCI*, 460 Mich 396, 442-443; 596 NW2d 164 (1999).

"To obtain a writ of mandamus the plaintiff must show that: (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial in nature, and (4) the plaintiff has no other adequate legal or equitable remedy." *White-Bey v Dep't Of Corrections*, 239 Mich App 221, 223-224; 608 NW2d 833 (1999), citing *In re MCI, supra* at 443, and *McKeighan v Grass Lake Twp Supervisor*, 234 Mich App 194, 211-212; 593 NW2d 605 (1999). The plaintiff bears the burden of demonstrating entitlement to the extraordinary remedy of a writ of mandamus. *White-Bey, supra* at 223; *Herp v Lansing City Clerk*, 164 Mich App 150, 161; 416 NW2d 367 (1987).

The Board comes within the definition of an "agency" in the Administrative Procedures Act. MCL 24.203(2). An agency has no inherent power. Any authority it may have is vested by the Legislature, in statutes, or by the Constitution. *Belanger & Sons, Inc v Dep't of State*, 176 Mich App 59, 62-63; 438 NW2d 885 (1989); *Pharris v Secretary of State*, 117 Mich App 202, 204; 323 NW2d 652 (1982). The Board's authority and duties with regard to proposed constitutional amendments are limited to determining whether the form of the petition substantially complies with the statutory requirements and whether there are sufficient signatures to warrant certification of the proposal. MCL 168.476; *Ferency v Secretary of State*, 409 Mich 569; 297

NW2d 544 (1980); *Council About Parochiaid v Secretary of State,* 403 Mich 396; 279 NW2d 1 (1978); *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947). Here, the Board approved the form of the petition and there is no dispute that there are sufficient signatures. We conclude, therefore, that the Board was obligated to certify the petition.

We further conclude that the Board erred in considering the merits of the proposal. Not only did the Board have no authority to consider the lawfulness of the proposal, but it is also well established that a substantive challenge to the subject matter of a petition is not ripe for review until after the law is enacted. *Ferency, supra* at 609; *Hamilton v Secretary of State,* 212 Mich 31; 179 NW 553 (1920); *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 218 Mich App 263, 270 n 5; 553 NW2d 679 (1996); *Automobile Club of Michigan Comm For Lower Rates Now v Secretary of State (On Remand),* 195 Mich App 613; 491 NW2d 269 (1992); *Ferency v Bd of State Canvassers,* 198 Mich App 271; 497 NW2d 233 (1993); *Beechnau v Secretary of State,* 42 Mich App 328; 201 NW2d 699 (1972). Accordingly, we grant the complaint for mandamus because the Board had a clear legal duty to certify the petition.

### VI. THE DIRECTOR OF ELECTIONS' PROPOSED BALLOT LANGUAGE

CPM has also asked this Court to order the Board to adopt the Director of Elections' proposed ballot language. Mandamus "will not lie for the purpose of reviewing, revising, or controlling the exercise of discretion reposed in administrative bodies," *Teasel v Dep't of Mental Health,* 419 Mich 390, 409-410; 355 NW2d 75 (1984). A remand with directions to approve a description of the proposal is not an appropriate remedy where

it is likely that the Board will continue its deadlock. As previously noted, the Board's authority is limited. With regard to the statement of purpose prepared by the Director of Elections, the Board's discretion is limited to either approving or disapproving the language. MCL 168.32; MCL 168.474. The Director of Elections has primary responsibility for formulating the language. Const 1963, art 12, § 2; MCL 168.32. MCL 168.32 expressly transferred all the powers or duties of both the Board and the Secretary of State with regard to the statement of purpose to the Director of Elections. The objecting members of the Board faulted the Director of Elections' proposed ballot language for not being sufficiently specific. However, the Board did not find that the Director of Elections' proposed ballot language was not true and impartial, as required by Const 1963, art 12, § 2 and MCL 168.474. In our view, the Director of Elections' proposed ballot language was clearly written using words that have a common, everyday meaning to the general public. Further, the Director of Elections' proposed ballot language creates no prejudice for or against the proposal.

Thus, the Board should have approved the Director of Elections' proposed ballot language. Further, as counsel for the Board pointed out, any attempt to determine how courts might eventually apply the proposed amendment, assuming it won voter approval, would be entirely speculative. Such speculation would not be a "true" statement of the amendment's purpose, in violation of Const 1963, art 12, § 2 and MCL 168.474.

As CPM points out, the Michigan Supreme Court has previously ordered the Secretary of State to place a proposal on the ballot using the statement of purpose prepared by the Director of Elections. *Automobile Club of Michigan Committee for Lower Rates Now v Secre-*

*tary of State No 2*, 440 Mich 1209 (1992). The fact that this was ordered without the involvement of the Board is demonstrated by Justice LEVIN's dissent, in which he stated that he would have directed the Board to approve a statement of purpose and "would not anticipate their inability to do so." *Id.* (LEVIN, J., dissenting). Here, while we cannot predict the future, our review of the record before the Board convinces us to a reasonable certainty that there is no reason to believe that the two Board members who voted against the proposal and the statement of purpose will have a sudden change of heart, regardless of any order of this Court directing them to approve a statement of purpose. Accordingly, our order granting the complaint for mandamus also directs the Secretary of State to take all necessary measures to place the proposal on the November ballot using the Director of Elections' proposed ballot language.

Concurrently with the release of this opinion, we have issued an order of mandamus. We retain jurisdiction.