MICHIGAN CIVIL RIGHTS INITIATIVE v
BOARD OF STATE CANVASSERS

Docket No. 264204. Submitted October 28, 2005, at Troy. Decided
October 31, 2005, at 9:00 a.m. Leave to appeal sought.

Michigan Civil Rights Initiative (MCRI) brought an original action in
the Court of Appeals seeking an order of mandamus requiring the
Board of State Canvassers to certify an initiative petition for a
proposed constitutional amendment on the November 2006 gen-
eral election ballot. The board had failed to reach a majority on
whether the petition should be certified after its members dis-
agreed on whether the petition should be certified after its
members disagreed on whether the board should investigate
allegations that voter signatures on the petition were procured
fraudulently. Operation King's Dream and others intervened in
the action.

The Court of Appeals *held*:

Because there is no dispute that the form of the petition is
proper or that there are sufficient signatures on the petition, the
Board of State Canvassers is obligated to certify the petition, and
thus breached its clear legal duty to certify the petition. An order
of mandamus is issued.

1. The board breached its clear legal duty to certify the petition.
The Constitution and the law do not allow the board to vote against
certification on the basis of allegations of misrepresentation. In this
case, there is no dispute that MCRI has a clear legal right to the
performance of the duty sought to be compelled. MCRI has no other
adequate remedy at law because the board failed to certify or reject
the petition. MCL 168.476(1) provides that the board's duties are
limited to determining whether the form of the petition substantially
complies with the statutory requirements and whether there are
sufficient signatures to warrant certification of the proposal. MCL
168.552(8) allows challenges to the sufficiency of the petition on the
grounds of genuineness of the signatures of the circulator or of
signers. The question of other violations of election laws is not within
the scope of the board.

2. MCL 168.476(2) grants the board the authority to conduct
hearings necessary for an investigation of a petition. That is not a

delegation of authority and may not be construed to expand the authority of the board beyond that of MCL 168.476(1). The statutory authority of the board to conduct investigations is limited to examining the validity of signatures, the registration status of each elector whose signature appears on the petition, and investigating any doubtful signatures. The board does not have the authority to conduct an investigation to determine whether fraudulent representations were made by the circulators of an initiative petition.

Order of mandamus issued.

1. ELECTIONS — BOARD OF STATE CANVASSERS — INITIATIVE PETITIONS — CONSTITUTIONAL AMENDMENTS.

The authority and duties of the Board of State Canvassers with respect to an initiative petition that proposes a constitutional amendment are limited to determining whether the form of the petition meets the statutory requirements and whether there are sufficient valid signatures to warrant certification of the proposal (MCL 168.476[1]).

2. ELECTIONS — BOARD OF STATE CANVASSERS — INITIATIVE PETITIONS — INVESTIGATIONS.

The statutory authority for the Board of State Canvassers to conduct investigations related to an initiative petition is limited to examining the validity of the signatures, the registration status of each elector whose name appears on the petition, and investigating any doubtful signatures (MCL 168.476[2]).

*Stephen J. Safranek* for Michigan Civil Rights Initiative.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Heather S. Meingast* and *Patrick O'Brien*, Assistant Attorneys General, for the Board of State Canvassers.

Carl Williams in propria persona.

Hassan Aleem in propria persona.

Percy Harris, Jr., in propria persona.

*Scheff & Washington, P.C.* (by *Miranda K. S. Massie, Shanta Driver,* and *George B. Washington*), for Operation King's Dream and others.

Before: SAAD, P.J., and CAVANAGH and JANSEN, JJ.

PER CURIAM.

### I. NATURE OF THE CASE

The Michigan Civil Rights Initiative (MCRI) complaint for mandamus asks this Court to direct the Board of State Canvassers to certify initiative petitions for placement on the November 2006 ballot. MCRI needed 317,757 signatures to qualify for the ballot and obtained and submitted 508,202 signatures. In 2003, the identical petitions in issue were approved by the board for form and language. But, thereafter, the circuit court held that the form did not comply with MCL 168.482(3). On appeal, a panel of our Court expedited the appeal, held that the circuit court erred, reversed the circuit court's order, found that the form of the petition complied with the statute, and directed the board to reinstate its earlier approval. Rather than attempt to place the petition on the ballot for the 2004 election, MCRI instead circulated new petitions, with identical language, for placement on the November 2006 ballot. The board has neither approved nor rejected the current petitions because the board failed to reach consensus regarding the recent allegations that the signatures were procured fraudulently. The board failed to reach agreement on whether the board has the authority to investigate these challenges. MCRI says the board lacks the authority to investigate these allegations, and, because we agree, we hereby grant the petition for

mandamus and contemporaneous with this opinion issue an order for mandamus.

## II. FACTS AND PROCEEDINGS

The initiative petition in issue seeks to amend the Michigan Constitution by adding a new § 25 to Article 1, and, as stated above, was the subject of a prior appeal in this Court, *Coalition to Defend Affirmative Action & Integration v Bd of State Canvassers,* 262 Mich App 395; 686 NW2d 287 (2004). The proposed amendment provides:

ARTICLE 1, SECTION 25:

Civil Rights.

(1) The University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education or public contracting.

(2) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

(3) For the purposes of this section "state" includes, but is not necessarily limited to, the state itself, any city, county, any public college, university, or community college, school district, or other political subdivision or governmental instrumentality of or within the State of Michigan not included in sub-section 1.

(4) This section does not prohibit action that must be taken to establish or maintain eligibility for any federal program, if ineligibility would result in a loss of federal funds to the state.

(5) Nothing in this section shall be interpreted as prohibiting bona fide qualifications based on sex that are reasonably necessary to the normal operation of public employment, public education, or public contracting.

(6) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of Michigan's anti-discrimination law.

(7) This section shall be self-executing. If any part or parts of this section are found to be in conflict with the United States Constitution or federal law, the section shall be implemented to the maximum extent that the United States Constitution and federal law permit. Any provision held invalid shall be severable from the remaining portions of this section.

(8) This section applies only to action taken after the effective date of this section.

(9) This section does not invalidate any court order or consent decree that is in force as of the effective date of this section. [*Coalition to Defend Affirmative Action, supra* at 398-399.]

After MCRI filed the petition in 2003, the board conducted a public hearing on December 11, 2003, to determine whether the form of the petition met the requirements of the Michigan Election Law, MCL 168.1 *et seq.* Two organizations, the Coalition to Defend Affirmative Action & Integration and Fight for Equality by Any Means Necessary (BAMN) and the Citizens for a United Michigan (CFUM), opposed the petition and claimed that the proposed language of the petition violated MCL 168.482(3), which requires that a petition state whether it would alter or abrogate an existing provision of the Constitution and include the text of the constitutional provision that would be changed or eliminated by the proposal. These organizations also objected to the inclusion, content, and placement of sum-

maries of the proposal on the petition. After the hearing, the board voted to approve the petition. *Coalition to Defend Affirmative Action, supra* at 399-400. BAMN and CFUM filed separate actions for mandamus against the board in the Ingham Circuit Court, again challenging the form of the petition. After ruling that the petition form failed to conform to MCL 168.482(3), the circuit court granted an order of mandamus, directing the board to rescind its approval. *Coalition to Defend Affirmative Action, supra* at 400. The board then filed claims of appeal from both cases, and in turn this Court expedited the appeal and issued a published opinion that reversed the circuit court's ruling that the petition did not comply with MCL 168.482(3). *Coalition to Defend Affirmative Action, supra* at 401-404. Specifically, this Court held that the proposed amendment did not "add to, delete from or change the existing wording of" Article 1, § 2, because the current language of that provision was unaffected by the amendment and the amendment did not render the provision "wholly inoperative." *Coalition to Defend Affirmative Action, supra* at 402. Accordingly, this Court ruled that the circuit court erred in granting mandamus relief and directed the board to reinstate its approval of the form of the petition. *Id.* at 407.

Apparently because of timing issues, MCRI chose not to pursue reinstatement of the petition for placement on the ballot in 2004, but, instead, circulated new petitions for placement of the proposal on the November 2006 general election ballot. On January 6, 2005, MCRI filed approximately 508,202 signatures in support of its initiative petition. The Secretary of State staff reviewed the petition, which included a random sampling of 500 signatures.

On April 18, 2005, two groups, Operation King's Dream (OKD) and BAMN filed a challenge to the MCRI petition. The challengers accepted the 500 signatures as representative and conducted their own review. They claimed that a significant number of the sampled signatures were procured by MCRI circulators through fraud. Among other claims, the challengers maintained that the petition language was deceptive and that the petition drive was funded by out-of-state interests, which were not properly reported under the Campaign Finance Act, MCL 169.201 *et seq.* MCRI filed a response to the challenge and pointed out that it submitted 508,202 signatures, whereas in order to qualify for the ballot only 317,757 valid signatures were needed, and that the petition itself fairly revealed its nature and purpose and was available to be read by any signer of the petition.

On July 13, 2005, the staff review report was issued, which examined the 500 sampled signatures, and found 450 valid signatures and 50 invalid signatures. The report noted that the 50 signatures were discounted because they were facially defective or were rejected on the basis of the signer's registration status, and that although 42 of the 50 invalid signatures were also identified in the challenge, these signatures were not rejected on the basis of the challenge. The report further concluded that the petition was sufficient under the standard procedures traditionally employed to sample petitions.

The board conducted a lengthy hearing on July 19, 2005, at which time the challengers and their witnesses and MCRI and its witnesses made their presentations. Upon conclusion of these presentations, one board member moved that the board, with the assistance of the Bureau of Elections, conduct an investiga-

tion and hearings regarding the challenge relating to the allegations of fraud and "doubtful signatures" on the basis of the board's authority to conduct any hearing upon any complaint pursuant to MCL 168.476(2). The board split on a vote of two to two, and the motion did not pass. Another board member moved to certify the petition, which also did not pass on a vote of one to two, with one abstention. Various other motions also did not reach a majority consensus.

As a result, MCRI filed its complaint for mandamus and sought a directive from this Court to the board to certify the petition for placement on the November 2006 ballot. MCRI says that the board has a clear legal duty under Michigan law to certify petitions meeting the statutory requirements, and that a writ of mandamus should issue. MCRI further contends that the Constitution and law do not allow the board to vote against certification on the basis of allegations of misrepresentation and that the board has ignored its legal duties and acted outside the scope of its authority.

In its answer to the complaint, the board acknowledges that it has a duty to issue an official declaration regarding the sufficiency of MCRI's petition pursuant to MCL 168.476 and 168.477, and contends that it attempted to fulfill its legal duty by listening to testimony, considering the arguments presented to it, and voting on various motions regarding the petition. Because there is a disagreement among the board members with respect to whether their duties include investigating the claims of fraudulent misrepresentations presented by the challengers, the board requests this Court's guidance in order to fulfill its statutory duty.

Furthermore, two motions to intervene were filed in this matter, which were granted in the accompanying order. In their answer to the complaint, the OKD

intervenors argue that in order for the board to discharge its duty to canvass the validity of the signatures, the Legislature conferred upon the board broad authority to hold hearings upon any complaints filed or for any purpose considered necessary by the board to conduct investigations of the petitions, under MCL 168.476(2). The OKD intervenors further contend that this Court should deny the complaint for mandamus and remand this matter to the board with instructions that the board may investigate whether MCRI in fact obtained signatures by means of fraud.

### III. LEGAL ANALYSIS

This Court clearly has jurisdiction to review the complaint for mandamus filed by MCRI. See *Citizens for Protection of Marriage v Bd of State Canvassers,* 263 Mich App 487; 688 NW2d 538 (2004), and *Deleeuw v Bd of State Canvassers,* 263 Mich App 497; 688 NW2d 847 (2004). Whether the defendant had a clear legal duty to perform and whether the plaintiff had a clear legal right to the performance of that duty are questions of law that this Court reviews de novo. *Citizens for Protection of Marriage, supra* at 491-492.

" 'To obtain a writ of mandamus, the plaintiff must show that: (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial in nature, and (4) the plaintiff has no other adequate legal or equitable remedy.' " *Deleeuw, supra* at 500, quoting *White-Bey v Dep't Of Corrections,* 239 Mich App 221, 223-224; 608 NW2d 833 (1999), citing *In re MCI Telecom Complaint,* 460 Mich 396, 443; 596 NW2d 164 (1999). Here, there is no dispute that MCRI has a clear legal right to the performance of the duty sought to be compelled and that MCRI has no

other adequate remedy at law, because the board has failed to certify or reject the petitions. In deciding whether mandamus relief is appropriate, this Court must resolve whether the board has a duty to conduct an investigation into the allegations of fraud asserted by the challengers.

The Board of State Canvassers is a constitutional board created by Const 1963, art 2, § 7. Any authority the board has is vested by the Legislature, in statutes, or by the Constitution. *Citizens for Protection of Marriage, supra* at 492. The Michigan Constitution, Const 1963, art 12, § 2, provides in part:

> Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amendment is to be voted upon. Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law. The person authorized by law to receive such petition shall upon its receipt determine, as provided by law, the validity and sufficiency of the signatures on the petition, and make an official announcement thereof at least 60 days prior to the election at which the proposed amendment is to be voted upon.

The board's authority and duties with regard to canvassing petitions is set forth under MCL 168.476(1), which provides, in relevant part:

> Upon receiving notification of the filing of the petitions, the board of state canvassers shall canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered electors. The qualified voter file may be used to determine the validity of petition

signatures by verifying the registration of signers. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote, there is a rebuttable presumption that the signature is invalid. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote in the city or township designated on the petition, there is a rebuttable presumption that the signature is invalid. The board may cause any doubtful signatures to be checked against the registration records by the clerk of any political subdivision in which the petitions were circulated, to determine the authenticity of the signatures or to verify the registrations. Upon request, the clerk of any political subdivision shall cooperate fully with the board in determining the validity of doubtful signatures by rechecking the signature against registration records in an expeditious and proper manner.[1]

This Court has stated that the board's duty is limited to determining whether the form of the petition substantially complies with the statutory requirements and whether there are sufficient signatures to warrant certification of the proposal. *Citizens for Protection of Marriage, supra* at 492, citing *Ferency v Secretary of State*, 409 Mich 569; 297 NW2d 544 (1980); *Council About Parochiaid v Secretary of State*, 403 Mich 396; 270 NW2d 1 (1978); *Leininger v Secretary of State*, 316 Mich 644; 26 NW2d 348 (1947).

In *Citizens for Protection of Marriage* this Court examined the scope of the board's duties in the context of an initiative petition to recognize that the union of one man and one woman in marriage shall be the only agreement recognized as a marriage for any purpose.

---

[1] Although none of the parties has quoted the current version of MCL 168.476(1), which was recently amended by 2005 PA 71, which was approved and filed on July 14, 2005, to take immediate effect, the slight modifications made by that act would not affect the arguments raised by the parties. We quote the current, effective version.

The Secretary of State estimated that there were 462,243 valid signatures on the petition and the number of valid signatures required was 317,757. However, two members of the board declined to certify the petition on the basis that the proposal was unlawful and unconstitutional. As a result, the ballot proponents filed a complaint for mandamus relief in this Court and sought immediate relief because the proponents wanted the proposal placed on the November 2004 ballot. *Id.* at 489-491. This Court issued an order and opinion that granted an order of mandamus because the board breached its clear legal duty to certify the petition where the petition was in the proper form and had sufficient signatures. *Id.* at 492-493. In doing so, this Court further held that the board erred in considering the merits of the proposal because it did not have authority to consider the lawfulness of the proposal.[2] *Id.* at 493.

In *Deleeuw* this Court also examined the board's duties regarding qualifying petitions under MCL 168.552(8), which is similar to MCL 168.476(1). The board could not reach a majority decision on several motions, including certification, regarding a petition to nominate Ralph Nader as an independent candidate for the office of the President of the United States for the November 2004 election. The signatures for the petition were collected by members and officials of the Republican Party, and the Michigan Democratic Party Chairman filed a challenge to the petition, asserting, among other things, that Nader's qualifying petition could not include the signatures filed by Nick Deleeuw because under MCL 168.590, the candidate must file the petition, and that a substantial number of the signatures

---

[2] This Court also ruled that the constitutionality of the proposal was not ripe for review. *Citizens for Protection of Marriage, supra* at 493.

had been obtained in violation of Michigan election law. *Deleeuw, supra* at 499-500. After the plaintiffs filed a complaint for mandamus, this Court issued an order and opinion and granted the complaint for mandamus. Noting there was nothing in MCL 168.552(8) that would permit the board to look behind the signatures to determine the motives of the individual signatories or the motives or desires of the candidate, this Court stated:

> Under MCL 168.552(8), challenges to the sufficiency of the petition are limited to "questioning the registration or the genuineness of the signature of the circulator or of a person signing a . . . petition filed with the secretary of state . . . ." The board had no authority to consider any issues other than those identified in MCL 168.552(8). The challenge to the petition failed to establish that there were not at least thirty thousand valid signatures filed in support of Nader's candidacy, and, in fact, the board never disputed the genuineness of the signatures or the registration status of the people who signed the petitions. Rather, the challenge alleged various violations of election law, a subject that is not within the scope of the board's review. See MCL 168.31 (requiring the Secretary of State to report election fraud to the Attorney General or prosecutor) and MCL 168.943 (conferring on circuit courts jurisdiction over offenses committed under the act). [*Deleeuw, supra* at 501.]

As a result, this Court held that the board breached its clear legal duty to certify the petition because the challenge to the petition failed to establish that there were not at least 30,000 valid signatures filed in support. *Id.* at 501-502.

Here, OKD and two board members contend that the board's authority to conduct an investigation into the allegations of fraud is drawn from subsection 2 of MCL 168.476, which provides:

> The board of state canvassers may hold hearings upon any complaints filed or for any purpose considered necessary by the board to conduct investigations of the petitions. To conduct a hearing, the board may issue subpoenas and administer oaths. The board may also adjourn from time to time awaiting receipt of returns from investigations that are being made or for other necessary purposes, but shall complete the canvass at least 2 months before the election at which the proposal is to be submitted.

The challengers and intervenors assert that the Legislature, through § 476(2), conferred broad authority on the board to "hold hearings upon *any* complaints filed or *for any purpose considered necessary by the board to conduct investigations of the petitions.*" (Emphasis added.) Yet, it is clear to us that the Legislature has only conferred upon the Board the authority to canvass the petition "to ascertain if the petitions have been signed by the requisite number of qualified and registered electors." MCL 168.476(1). MCL 168.476(1) clearly indicates that this authority encompasses examining the validity of the signatures and the registration status of each elector whose signature appears on the petition and investigating any doubtful signatures. Moreover, it is also clear that the Legislature, through MCL 168.476(2), only conferred upon the board the right to hold hearings, should a complaint be filed or for any purpose considered necessary "to conduct investigations of the petitions." We cannot construe § 476(2) as a delegation of additional authority or as an expansion beyond the authority prescribed under § 476(1). Here, the challengers and intervenors seek an investigation that goes beyond the four corners of the petition itself (i.e., the validity of the signatures or registration status of the electors) into the circumstances by which the signatures were obtained. Such an investigation is clearly beyond the scope of the board's authority set

forth under MCL 168.476(1). Because the Legislature failed to provide the board with authority to investigate and determine whether fraudulent representations were made by the circulators of an initiative petition, we hold that the board has no statutory authority to conduct such an investigation. Moreover, an attempt by the board to go beyond its authority as clearly outlined in the Constitution and statutes undermines the constitutional provision that reserves for the people of the state of Michigan the power to propose laws through ballot initiatives.[3]

Because there is no dispute that the form of the petition is proper or that there are sufficient signatures, we conclude that the board is obligated to certify the petition, and thus, breached its clear legal duty to certify the petition.[4] Accordingly, we remand to the Board of State Canvassers with directions to approve the petition for placement on the November 2006 ballot. Along with the release of this opinion, we issue an order of mandamus. We retain jurisdiction.

---

[3] Const 1963, art 2, § 9 provides, "The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. . . ."

[4] The OKD intervenors also contend that the petition failed to comply with MCL 168.482(3). Yet, they acknowledge that this Court previously rejected this argument in *Coalition to Defend Affirmative Action, supra* at 395. Therefore, we will not address this argument any further.