# Order

Michigan Supreme Court
Lansing, Michigan

July 13, 2006

130342 (144)(146)

MICHIGAN CIVIL RIGHTS INITIATIVE,
      Plaintiff-Appellee,

v

BOARD OF STATE CANVASSERS,
      Defendant-Appellee,

and

CARL WILLIAMS, HASSAN ALEEM, and
PERCY HARRIS, JR.,
      Intervenors-Appellees,

and

OPERATION KING'S DREAM, EXIE CHESTER-
GRIFFIN, ROOSEVELT T. BRISTON, LILLIAN
A. CUMMINGS, NICOLE MCCOY, ALICIA
ROSE SPENCER, CHERYL THOMPSON,
LESLIE ATZMON, MONICA SMITH,
MARICRUZ LOPEZ, KATE STENVIG, LIANA
MULHOLLAND, ALISHIA STEWARD,
JOSEPH JOHNSON, JOHNATHAN CRUTCHER,
TURQUOISE WISE-KING, DENESHEA
RICHEY, IVAN ADAMS, RHIANNON
CHESTER, and CURTIS RAY,
      Intervenors-Appellants.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 130342
COA: 264204

On order of the Court, the motion for reconsideration of this Court's order of March 29, 2006 is considered, and it is DENIED, because it does not appear that the order was entered erroneously. The motions to file brief amicus curiae are GRANTED.

MARKMAN, J., concurs and states as follows:

In their motion for reconsideration, intervenors ask this Court to consider a report prepared by the Michigan Civil Rights Commission (CRC). This report contends that numerous petition signatures were obtained in support of placing the proposed Michigan Civil Rights Initiative (MCRI) on the ballot this November by circulators who misrepresented that this measure was "in favor of" affirmative action. For the following reasons, I concur in the majority's order denying this motion.

(1) Assuming the accuracy of everything set forth in the CRC report, the signers of these petitions did not sign the oral representations made to them by circulators; rather,

they signed written petitions that contained the actual language of the MCRI. This Court does not sit in review of the hundreds of thousands of individual conversations that may have occurred between petition circulators and signers. Rather, it sits in review of the petitions themselves.

(2) The Board of State Canvassers (BSC) has the authority only to "ascertain if the petitions have been signed by the requisite number of qualified and registered electors." MCL 168.476(1). Therefore, once the BSC determined that there was a sufficient number of valid signatures, the BSC was obligated to certify the petition. This was the conclusion of the Court of Appeals, and it is consistent with the law.

(3) Once this Court embarks upon the task of evaluating countless conversations between petition circulators and signers, it is difficult to imagine what, short of a verbatim rendition, would constitute an appeal-proof description of a proposed constitutional amendment. Any summarization of such a measure necessarily will involve some loss in precision or accuracy, and there will always be signers who might claim that their signatures were a function of such imprecision or inaccuracy.

(4) Moreover, it is not the role of the judiciary to evaluate conversations of this kind in order to determine what constitutes a "fair" representation concerning a matter of political dispute. Rather, this is a determination for the people of Michigan when they cast their votes.

(5) Further, it is the premise of our constitutional process that public debate and discussion, media analysis, and an informed electorate will, in the end, overcome false or unreasonable representations concerning matters of political dispute. It is not for the judiciary to take sides.

(6) In carrying out the responsibilities of self-government, "we the people" of Michigan are responsible for our own actions. In particular, when the citizen acts in what is essentially a legislative capacity by facilitating the enactment of a constitutional amendment, he cannot blame others when he signs a petition without knowing what it says. It is not to excuse misrepresentations, when they occur, to recognize nonetheless that it is the citizen's duty to inform himself about the substance of a petition before signing it, precisely in order to combat potential misrepresentations.

(7) A necessary assumption of the petition process must be that the signer has undertaken to read and understand the petition. Otherwise, this process would be subject to perpetual collateral attack, and the judiciary would be required to undertake determinations for which there are no practical legal standards and which essentially concern matters of political dispute.

(8) The ultimate check on the petition process must remain the electoral process. No ballot measure can become part of our Constitution unless it is approved by a majority of the voters of this state in November.

CAVANAGH, J., would grant reconsideration and, on reconsideration, would grant leave to appeal.

KELLY, J., dissents and states as follows:

The Michigan Supreme Court should grant reconsideration in this case and grant leave to appeal. The issues involved are of enormous public importance and merit full briefing and oral argument before the Court makes its final decision. Now, for the first time, the Court has for its review the Michigan Civil Rights Commission's *Report on the Use of Fraud and Deception in the Gathering of Signatures for the Michigan Civil Rights Initiative.*

In the motion for reconsideration, intervenor Operation King's Dream raises two issues: (1) whether the petition for the proposal was defective because it did not contain, on its face, the text of the current equal protection provision contained in the Michigan Constitution, and (2) whether the Board of Canvassers had both the authority and the duty to investigate racially targeted fraud in the gathering of the signatures on the petitions.

The allegations of fraud seem credible and the statutes involved appear to give the Board of Canvassers the authority to investigate fraud. The Court should be concerned that the power of the initiative petition might be seriously undermined if the Board of Canvassers could not review challenges like the ones made in this case. The voters created the power of the initiative petition when they enacted our state constitution over forty years ago. Const 1963, art 12, § 2.

Unfortunately, this Court denied the application for leave to appeal in this case. I believe it committed a grave error in doing so. The motion for reconsideration provides us the opportunity to revisit that decision. The motion raises the same important issues but, significantly, provides us through the *report* new in-depth factual information on the merits of the application. The *report* was not in existence when the matter first came before us.

In a letter accompanying the *report,* Commission Chairman Mark Bernstein and Vice Chairman Mohammed Abdrabboh, assert that the *report* "raises significant civil rights concerns relating to our most fundamental right, that being the right to vote." They ask this Court to intervene, stating,

> Two notable and distressing truths emerge from the hundreds of pages of testimony included in the report. First, the instances of misrepresentation regarding the content of the MCRI [Michigan Civil Rights Initiative] ballot language are not isolated or random. Acts of misrepresentation occurred across the state, in multiple locations in the same communities, and over long periods of time. Second, the impact of these acts of deception is substantial. It appears that the acts documented in

the report represent a highly coordinated, systematic strategy involving many circulators and most importantly, thousands of voters.

The events at issue in this report arise in the gap between the responsibilities attendant upon citizenship in a democracy. The responsibility of voters to read and understand the content of ballot language when signing a circulator's petition. And the responsibility of MCRI and its agents to be truthful. Does a voter's failure to live up to his or her responsibility give license to the fraudulent acts of a circulator? All fair-minded citizens know the answer to this question.

These serious grievances go to the core of our democracy and violate the very constitution that this honorable court is sworn to uphold. It is not enough for this court to say that it is against injustice. It must work to secure justice. Just as our commission has done its duty, so, too, must this Court.

The *report* chronicles public hearings held in four locations: Detroit, Flint, Lansing, and Grand Rapids. The hearings were convened in response to citizen complaints of fraud in the signature gathering process. The commission relates that three distinct groups of people gave testimony.

The first and primary group was composed of citizens who claim to have been the victims of fraud and deceit in the gathering of signatures. Included are petition circulators who testified voluntarily regarding their role in the claimed deceptive practices. The second group included citizens who were approached by the circulators but did not sign the petitions. Members of the group testified that they refused to sign. They indicated that they were aware of the true purpose of the petition or that they read it and believed it to be against affirmative action. Finally, there were citizens outraged that the deceit allegedly occurred and that no apparent action has been taken to void the petitions or punish the organizers of the petition drive. The commission's conclusions are that the Michigan Civil Rights Initiative committed acts of misrepresentation that

were neither random nor isolated.  It concludes also that the impact of these fraudulent acts was substantial.

The commission's *report* is an impressive compilation of persuasive information that this Court should not dismiss without careful consideration.  We should grant reconsideration and grant leave to appeal.  We should provide these vital issues the briefing and argument they deserve.  If we fail to do so, we shirk our responsibility as the state's highest court.



I,  Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 13, 2006

Clerk