*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

OPERATION KING'S DREAM; KWAME M.
KILPATRICK; AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES, (AFSCME),
AFL-CIO; SAMANTHA CANTY; BELITA H. COWAN;
MARTHA CUNEO; LINDA DEE MCDONALD;
MICHELLE MCFARLIN; PEARLINE MCRAE; SARAH
SMITH,

　　　　　　　　　　　*Plaintiffs-Appellants/*
　　　　　　　　　　　　　　*Cross-Appellees,*

　　　　　*v.*

WARD CONNERLY; JENNIFER GRATZ; MICHIGAN
CIVIL RIGHTS COMMISSION; TERRI LYNN LAND, in
her official capacity as Secretary of State; KATHRYN
DEGROW; LYNN BANKES; DOYLE O'CONNOR, in
their official capacities as members of the state
Board of Canvassers; CHRISTOPHER THOMAS, in his
official capacity as State Director of Elections,
　　　　　　　　　*Defendants-Appellees (06-2144),*

TERRI LYNN LAND; KATHRYN DEGROW; LYNN
BANKES; DOYLE O'CONNOR; CHRISTOPHER
THOMAS,

　　　　　　　　　　　*Defendants (06-2258),*

WARD CONNERLY; JENNIFER GRATZ; MICHIGAN
CIVIL RIGHTS COMMISSION,
　*Defendants-Appellees/Cross-Appellants (06-2258).*

Nos. 06-2144/2258

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-12773—Arthur J. Tarnow, District Judge.

Argued: July 25, 2007

Decided and Filed: August 28, 2007

Before:  COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:**  Shanta Driver, SCHEFF & WASHINGTON, Detroit, Michigan, for Appellants. Michael E. Rosman, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C., Heather S. Meingast, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:**  Shanta Driver, George B. Washington, SCHEFF & WASHINGTON, Detroit, Michigan, for Appellants.  Michael E. Rosman, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C., Heather S. Meingast, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. After Michigan's Board of Canvassers approved for Michigan's November 2006 general election ballot a citizen-initiated proposal ("Proposal 2") that would amend Michigan's constitution to prohibit all sex- and race-based preferences in public education, public employment, and public contracting, Plaintiffs-Appellants/Cross-Appellees Operation King's Dream, along with other organizations and individuals, brought suit under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, against Ward Connerly, Jennifer Gratz, the Michigan Civil Rights Initiative committee (the "MCRI," collectively, the "MCRI Defendants"), and against various Michigan officials (the "State Defendants"). The complaint sought only to enjoin the placement of Proposal 2 on the November 2006 general election ballot, alleging that the MCRI Defendants and their agents used racially targeted voter fraud in contravention of the Voting Rights Act to obtain signatures in support of Proposal 2. After bringing suit, the Plaintiffs moved for a preliminary injunction to prevent Proposal 2's placement on the ballot, and both Defendant groups moved to dismiss for failure to state a claim under the Voting Rights Act. The district court denied the Plaintiffs' preliminary-injunction motion and granted the motions to dismiss (which, because of an evidentiary hearing, were converted into motions for summary judgment).

The Plaintiffs now appeal the denial of their preliminary-injunction motion and the dismissal of their Voting Rights Act claim. In addition, the MCRI Defendants cross-appeal the admission into evidence of a state-issued report critical of the MCRI's methods for obtaining signatures in support of Proposal 2. Notwithstanding the disturbing allegations underlying the Plaintiffs' complaint, which the district court substantiated, because the opportunity to keep Proposal 2 off the ballot has long since passed, the Plaintiffs' appeal is dismissed as moot. Consequently, so too is the MCRI Defendants' cross-appeal.

**I. BACKGROUND**

This is but one piece of litigation spurred by the Proposal 2 saga. As we speak, a federal constitutional challenge to those portions of Michigan's constitution amended by Proposal 2 is proceeding through the district court. *See, e.g.*, *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 253 (6th Cir. 2006) (granting an emergency stay of a district court's order preliminarily enjoining the enforcement of Proposal 2 until July 1, 2007). To understand where we are today, a

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

recitation of the facts that got us here is necessary. Because we defer to a district court's factual findings unless they are clearly erroneous, *Ellis v. Diffie*, 177 F.3d 503, 505 (6th Cir.1999), the district court's comprehensive opinion, *Operation King's Dream v. Connerly*, ___ F. Supp. ____, 2006 WL 2514115 (E.D. Mich. 2006), guides us.

According to the MCRI's website, it is a coalition "from across the political spectrum" opposed to "policies that divide based on our skin color, sex, national origin, ethnicity, and race." The Michigan Civil Rights Initiative: Get Involved, http://www.michigancivilrights.org/getinvolved.html (last visited Aug. 11, 2007). To this end, from approximately July 2004 through December 2004, the MCRI, with the assistance of paid agents, solicited signatures in support of placing a statewide ballot initiative that would later become Proposal 2 on Michigan's November 2006 general election ballot. Proposal 2 has been characterized as "anti-affirmative action." *Operation King's Dream*, 2006 WL 2514115, at *1; *see also, e.g.*, Approved Proposal 2 Ballot Language, http://www.michigan.gov/documents/Bal_Lang_MCRI_152610_7.pdf (last visited Aug. 11, 2007) ("A PROPOSAL TO AMEND THE STATE CONSTITUTION TO BAN AFFIRMATIVE ACTION PROGRAMS . . . ."). The petition text that Michigan voters signed in support of the MCRI's initiative petition reads as follows:

> A Proposal to amend the Michigan Constitution by adding a Section 25 to Article I that would: (1) prohibit the University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district from discriminating against, or granting preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting; (2) prohibit the State from discriminating against, or granting preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting; (3) define for purposes of this section "State" as including, but not necessarily limited to, the State itself, any city, county, public college or university, community college, school district, or other political subdivision or governmental instrumentality of or within the State of Michigan; (4) not apply to actions that must be taken to establish or maintain eligibility for any federal program, if ineligibility would result in a loss of federal funds; (5) not affect bona fide qualifications based on sex that are reasonably necessary to the normal operation of public employment, public education, or public contracting; (6) allow remedies as are now allowed by law; (7) be self-executing and its provisions severable; (8) set an effective date; (9) not invalidate any court order or consent decree that is in force as of the effective date.

*Operation King's Dream*, 2006 WL 2514115, at *2 n.2.

On January 6, 2005, the MCRI submitted 508,202 signatures in support of its initiative petition. *Id*. at *2. To qualify its initiative for the November 2006 general ballot, the MCRI needed to submit only 317,757 valid signatures, representing ten percent of the total votes cast in the last election for governor. *See* Mich. Const., Art 12, § 2. The Michigan Secretary of State reviewed the petition for irregularities and, after analyzing 500 random signatures, issued a report discounting fifty signatures because they were facially defective or because the signer was not a registered voter. *Id*. Operation King's Dream and another like-minded group, the Coalition to Defend Affirmative

Action & Integration and Fight for Equality by Any Means Necessary ("BAMN"), however, conducted their own review of the same 500 sample signatures and concluded "that a significant number of the sampled signatures were procured by MCRI circulators through fraud." *Mich. Civil Rights Initiative v. Bd. of State Canvassers*, 708 N.W.2d 139, 142 (Mich. Ct. App. 2005). Specifically, Operation King's Dream and BAMN allege that the MCRI signature gatherers deceived signers into believing that the initiative *supported* affirmative action, as the term is commonly understood, rather than one that would ban such programs.

On July 19, 2005, Michigan's Board of Canvassers heard challenges to the petition and testimony regarding the claims of deception and fraud. *Operation King's Dream*, 2006 WL 2514115, at *3. After a protracted (and unresolved) internal dispute regarding whether the Board even had authority to investigate election-fraud claims, one Board member nonetheless moved that the Board, along with the Bureau of Elections, conduct an investigation of the fraud allegations. *Id*. The four-member Board split on a vote of two to two, and the motion to investigate did not pass. *Id*. Afterwards, another Board member moved to certify the MCRI's initiative for placement on the ballot. *Id*. This motion failed on a vote of one to two, with one abstention. *Id*.

After the motion to certify failed, the MCRI filed a complaint for mandamus relief in the Michigan Court of Appeals, seeking an order requiring the Board of Canvassers to certify the initiative. *Mich. Civil Rights Initiative*, 708 N.W.2d at 140. On October 31, 2005, the Michigan Court of Appeals held that "the Legislature failed to provide the board with authority to investigate and determine whether fraudulent representations were made by the circulators." *Id*. at 143. Therefore, "the board [had] no statutory authority to conduct such an investigation." *Id*. The court granted the MCRI's request for mandamus and remanded the case to the Board with instructions to certify the petition for placement on the ballot. *Id*. Despite a few hiccups, including a large, anti-Proposal 2 protest that disrupted a public Board meeting, the Board certified the petition and summary ballot language a few months later on January 20, 2006. *Id*. at 4.

After filing a motion for reconsideration, which the Michigan Court of Appeals denied, Operation King's Dream filed an application for leave to appeal to the Michigan Supreme Court. On March 29, 2006, the Court denied the application, with one Justice dissenting. *Mich. Civil Rights Initiative v. Bd. of State Canvassers*, 711 N.W.2d 82 (Mich. 2006). On April 18, 2006, intervenors filed a motion for reconsideration asking the Michigan Supreme Court to delay deciding the motion until the Michigan Civil Rights Commission—a state-funded watchdog group, authorized under Michigan's constitution, Mich. Const., Art. 5, § 29, and charged with investigating all allegations of discrimination—had an opportunity to file a report regarding its investigation of election fraud. *Id*. at *4.

On June 7, 2006, the Michigan Civil Rights Commission published a report titled *Report on the Use of Fraud and Deception in the Gathering of Signatures for the Michigan Civil Rights Initiative*, and submitted it to the Michigan Supreme Court in support of the intervenors' motion for reconsideration. *Id*. Its comprehensive report summarized and set forth testimony from citizens who signed the MCRI's petition because circulators told them that it supported affirmative action. *Id*. The report also included testimony from petition circulators who stated that they misled potential signers in this regard. *Id*. Along with the report, the Michigan Civil Rights Commission submitted a letter critical of the MCRI and its signature-gathering tactics, stating as follows:

> This report presents evidence of shameful acts of deception and misrepresentation by paid agents of the Michigan Civil Rights Initiative . . . .
>
> . . . .
>
> Two notable and distressing truths emerge from the hundreds of pages of testimony included in the report. First, the instances of

> misrepresentation regarding the content of the MCRI ballot language are not isolated or random. Acts of misrepresentation occurred across the state, in multiple locations in the same communities, and over long periods of time. Second, the impact of these acts of deception is substantial. It appears that the acts documented in the report represent a highly coordinated, systematic strategy involving many circulators and most importantly, thousands of voters.

(Joint Appendix ("JA") 26–27.) Notwithstanding the report and letter, on July 13, 2006, the Michigan Supreme Court denied the intervenors' motion for reconsideration, with two Justices dissenting. *Mich. Civil Rights Initiative v. Bd. of State Canvassers*, 716 N.W.2d 590 (Mich. 2006); *see id.* at 592 (Kelly, J., dissenting) ("The issues involved are of enormous public importance and merit full briefing and oral argument before the Court makes its final decision.").

After exhausting state avenues of relief, on June 22, 2006, the Plaintiffs filed the instant suit in the United States District Court for the Eastern District of Michigan, seeking to enjoin Michigan officials from placing Proposal 2 on the November 2006 general election ballot, alleging that the Defendants violated Section 2 of the Voting Rights Act when the MCRI Defendants used racially targeted voter fraud to obtain signatures in support of its initiative petition. Section 2 of the Voting Rights Act prohibits all state-sponsored discrimination that results in a denial or abridgement of the right to vote. 42 U.S.C. § 1973; *see also, e.g.*, *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 363 (6th Cir. 2002) ("Section 2, unlike other federal legislation that prohibits racial discrimination, does not require proof of discriminatory intent. Instead, a plaintiff need show only that the challenged action or requirement has a discriminatory effect on members of a protected group . . . ."). The Defendant groups filed motions to dismiss, and the Plaintiffs filed a motion for a preliminary injunction.

The district court held an evidentiary hearing on August 17, 2006, and heard oral arguments the next day. The district court, over the MCRI Defendants' objection, also admitted into evidence the Michigan Civil Rights Commission's report. Because the district court held an evidentriary hearing, the Defendant groups' motions to dismiss were converted into summary-judgment motions, and, on August 29, 2006, the district court issued an opinion and order granting summary judgment to both Defendant groups and denying the Plaintiffs' request for injunctive relief. *Operation King's Dream*, 2006 WL 2514115, at *19. Before reaching these conclusions, however, the district court found that the MCRI engaged in widespread fraud:

> The Court finds that MCRI and its circulators engaged in a pattern of voter fraud by deceiving voters into believing that the petition supported affirmative action. At the evidentiary hearing and oral argument conducted in this Court, neither the state defendants nor the MCRI defendants presented an adequate defense either to the facts set forth in the Michigan Civil Rights Commission's Report or to the testimony elicited during the evidentiary hearing. The evidence overwhelmingly favors a finding that the MCRI defendants engaged in voter fraud.
>
> The Court finds that the conduct of the circulators went beyond mere "puffery" and was in fact fraudulent because it objectively misrepresented the purpose of the petition. As the Second Circuit stated in *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853 (2d Cir. 1918), the critical difference between puffing and fraud is that in the latter situation, the recipient of false information is in a position to reasonably rely on the assurances of the speaker . . . .

>    In this case, some of the circulators of the MCRI petition were themselves led to believe that they were circulating a petition supporting affirmative action. Other circulators obviously knew that the petition opposed affirmative action and deliberately misrepresented the petition's purpose. In either situation, the signers were in a position to reasonably rely on the circulators' misrepresentations.
>
>    The MCRI defendants were aware of and encouraged such deception by disguising their proposal as a ban on "preferences" and "discrimination," without ever fulfilling their responsibility to forthrightly clarify what these terms were supposed to mean. Jennifer Gratz's confusion at the evidentiary hearing as to the purpose of the MCRI's proposal supports the Court's conclusion that the MCRI deliberately encouraged voter fraud and did nothing to remedy such fraud once it occurred.

*Id*. at *11–12.

The district court concluded that, although the Plaintiffs' challenge was within the scope of Section 2 of the Voting Rights Act and state action was present, both Defendant groups were nonetheless entitled to summary judgment because the Plaintiffs failed to establish that circulator deception was specifically targeted at Black voters. *Id.* at *17. Additionally, the district court concluded that even if all Black voters' signatures were stricken from the petitions, there would still have been enough signatures to place Proposal 2 on the ballot.

This timely appeal followed. On September 2, 2006, the Plaintiffs filed an emergency motion in this Court to enjoin the placement of Proposal 2 on the ballot pending appeal. This Court denied the motion. *Operation King's Dream v. Connerly*, No. 06-2144 (6th Cir. Sept. 11, 2006) (order).

Consequently, Michigan's November 2006 general election took place with Proposal 2 on the ballot. Michigan voters approved Proposal 2 with approximately 57.9% of the vote. *See* State Proposal - 06-2: Constitutional Amendment: Ban Affirmative Action Programs, at http://miboecfr.nictusa.com/election/results/06GEN/90000002.html (last visited Aug. 11, 2007). Accordingly, Article 1 of Michigan's constitution was amended to include a new section, titled "Affirmative Action," which now reads, in part:

>    (1) The University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education or public contracting.
>
>    (2) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

Mich. Const., Art. 1, § 26.

The day after the election, some of the Plaintiffs, and other individuals and groups not part of this suit, filed a new action in district court against various public universities in Michigan and various Michigan officials, challenging the legality of this amendment under the United States

Constitution. On December 19, 2006, the district court entered an injunction, stipulated to by the plaintiffs, the defendant universities, and the defendant officials, enjoining the application of the amendment to the admissions and financial-aid policies of Michigan's public universities until July 1, 2007 (i.e., through the 2007 admissions cycle). Eric Russell, a white applicant to the University of Michigan Law School, intervened and sought a temporary stay of the stipulated-to injunction pending appeal. This Court granted the temporary stay pending appeal. *Coal. to Defend Affirmative Action*, 473 F.3d at 253. The Supreme Court denied the plaintiffs' motion to vacate this Court's temporary stay. *Coal. to Defend Affirmative Action v. Granholm,* 127 S.Ct. 1146 (2007). That suit is still pending in the district court.

This brings us to where we are today. The record and the district court's factual findings indicate that the solicitation and procurement of signatures in support of placing Proposal 2 on the general election ballot was rife with fraud and deception. Neither Defendant group has submitted anything to rebut this. By all accounts, Proposal 2 found its way on the ballot through methods that undermine the integrity and fairness of our democratic processes. Nevertheless, we must be guided by law, not outrage, and it is to the law we now turn. *See United States v. Lanier*, 73 F.3d 1380, 1400 (6th Cir. 1996) (Jones, J. dissenting) ("One of the cardinal principles that guides . . . appellate review . . . is to insure that outrage at the egregiousness of the complained of conduct has not intruded upon the application of neutral principles of law.").

## II. DISCUSSION

The Plaintiffs appeal the district court's denial of their motion for a preliminary injunction seeking to prevent Proposal 2 from being placed on the November 2006 general election ballot, and the district court's grant of summary judgment to both Defendant groups. We reach neither issue because, although neither party expressly brought mootness to our attention, we hold that the Plaintiffs' appeal is moot. *See Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993) ("[W]e address the problem of mootness on our own motion.").

A review of the Plaintiffs' complaint reveals that they requested only injunctive relief in the district court:

> [T]he plaintiffs request that this Court, after an appropriate hearing, grant a preliminary and final injunction restraining the defendants from placing the MCRI's proposed amendment on the November 2006 general election ballot. The plaintiffs further request that this Court expedite the time for answering of the Complaint and for discovery and, [sic] grant plaintiffs [sic] attorneys' fees and costs and such further relief that is just and equitable.

(JA 25.) In substance, the Plaintiffs' sought only to enjoin Proposal 2's placement on Michigan's November 2006 general election ballot.

The Plaintiffs' request for injunctive relief has become moot. Proposal 2 was certified for the ballot; Proposal 2 was included on the ballot; the November 2006 election took place; the Michigan voters approved Proposal 2; and Michigan's constitution was accordingly amended. Simply put, the opportunity to keep Proposal 2 off the November 2006 general election ballot has long since passed. *See Padilla v. Lever*, 463 F.3d 1046, 1049 (9th Cir. 2006) ("The plaintiffs['] . . . claim for injunctive relief [preventing the election] has become moot. The recall election has occurred, and the term of office filled by that election has expired."); *cf., e.g.*, *Parsons Inv. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972) (holding that the propriety of a district court's decision to deny an appellant a preliminary injunction prohibiting the sale of stock was moot where the stock was sold prior to the appeal). Indeed, the Plaintiffs concede that their request for

injunctive relief is moot (Plaintiffs' Br. 42 ("As the election has already occurred that request [for a injunctive relief] is now moot."), rendering their entire appeal moot.

Nonetheless, the Plaintiffs ask this Court to invalidate those portions of Michigan's constitution amended by the passage of Proposal 2 because Proposal 2 "gained its place on the ballot [through] repeated and systematic violations of the Voting Rights Act." (*Id.*) This, however, is an entirely new challenge that was never presented to the district court. The issue litigated in the district court was whether fraud during the initiative petition process can serve as a basis for injunctive relief under Section 2 of the Voting Rights Act to keep a proposal off the ballot. On appeal, and for the first time, the Plaintiffs' now attempt to advance a Section 2 claim seeking to *invalidate* a state constitutional amendment. To be sure, this is a very different challenge than the one presented to the district court and in the Plaintiffs' complaint. Because the Plaintiffs present this argument for the first time on appeal, we decline to address it. *See, e.g.*, *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir. 1990) ("This court will not decide issues or claims not litigated before the district court."). Moreover, the Plaintiffs' decision on appeal to alter the relief sought and transform the cause of action further underscores that their appeal is moot.

In sum, because it is too late for us to grant the relief that the Plaintiffs requested in their complaint and litigated in the district court, any opinion that we issue addressing the merits of the their Voting Rights Act challenge would be advisory. *See, e.g.*, *Hall v. Beals*, 396 U.S. 45, 48 (1969) (holding that a case becomes moot whenever it "los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law"). Thus, the Plaintiffs' appeal is moot. *See, e.g.*, *Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.,* 396 F.3d 737, 742 (6th Cir. 2005) ("[A]n appeal must be dismissed as moot when, by virtue of intervening events, the court of appeals cannot fashion effective relief.").

### III. CONCLUSION

For these reasons, we **DISMISS** the Plaintiffs' appeal as moot. Consequently, we also **DISMISS** the MCRI Defendants' cross-appeal as moot.