RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0362p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

COALITION TO DEFEND AFFIRMATIVE ACTION;
COALITION TO DEFEND AFFIRMATIVE ACTION,
Integration and Immigrant Rights and Fight For
Equality By Any Means Necessary (BAMN), et al.,
*Plaintiffs - Appellees,*

*v.*

JENNIFER GRANHOLM, et al.,
*Defendants - Appellees,*

MICHIGAN CIVIL RIGHTS INITIATIVE COMMITTEE;
AMERICAN CIVIL RIGHTS FOUNDATION; TOWARD A
FAIR MICHIGAN,
*Proposed Intervenors - Appellants.*

Nos. 06-2653/2656

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-15024—David M. Lawson, District Judge.

Submitted: August 14, 2007

Decided and Filed: September 6, 2007

Before: KENNEDY, MARTIN, and COLE, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Sharon L. Browne, Alan W. Foutz, PACIFIC LEGAL FOUNDATION, Sacramento, California, Charles J. Cooper, Michael W. Kirk, COOPER & KIRK, Washington, D.C., Kerry L. Morgan, PENTIUK, COUVREUR & KOBILJAK, Wyandotte, Michigan, Michael E. Rosman, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C., for Appellants. Philip J. Kessler, BUTZEL LONG, Detroit, Michigan, Leonard M. Niehoff, BUTSEL LONG, Ann Arbor, Michigan, George B. Washington, SCHEFF & WASHINGTON, Detroit, Michigan, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, James E. Long, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

COLE, J., delivered the opinion of the court, in which MARTIN, J., joined. KENNEDY, J. (pp. 10-13), delivered a separate opinion concurring in part and dissenting in part.

1

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Before us are two appeals challenging a district court's order denying intervention under Federal Rule of Civil Procedure 24(a) and (b) to (1) the Michigan Civil Rights Initiative committee (the "MCRI"), (2) the American Civil Rights Foundation (the "ACRF"), and (3) Toward a Fair Michigan's ("TAFM," collectively, the "proposed intervenors").[1] Each wishes to intervene in an action brought against (1) Jennifer Granholm, the Governor of Michigan, and (2) the Regents of the University of Michigan, the Board of Trustees of Michigan State University, and the Board of Governors of Wayne State University (collectively, the "Universities"), seeking to invalidate and permanently enjoin from enforcement a recently enacted amendment to Michigan's constitution that outlaws, among other things, sex- and race-based preferences in public education, public employment, and public contracting. Mich. Const., art. 1, § 26. The amendment was the result of the Michigan voters' approval, in November 2006, of Proposal 06-2 ("Proposal 2"), a statewide ballot initiative. For the following reasons, we **AFFIRM** the district court's denial of intervention to the proposed intervenors.

## I. BACKGROUND

From approximately July 2004 through December 2004, the MCRI, with the assistance of paid agents, solicited signatures in support of placing a statewide ballot initiative, which would later become Proposal 2, on Michigan's November 2006 general election ballot. *Operation King's Dream v. Connerly*, ___ F.3d ____, 2007 WL 2416815, at *1 (6th Cir. 2007). Proposal 2 has been characterized as "anti-affirmative action," *Operation King's Dream v. Connerly*, ___ F. Supp. ____, 2006 WL 2514115, at *1 (E.D. Mich. 2006), because, if approved, it would amend Michigan's constitution to prohibit the state from granting "preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." Mich. Const., art. 1, § 26; *see also, e.g.*, *Operation King's Dream*, 2006 WL 2514115, at *2–3. Indeed, Proposal 2's path to the ballot was not without controversy. *Operation King's Dream,* 2007 WL 2416815, at *6 ("By all accounts, Proposal 2 found its way on the ballot through methods that undermine the integrity and fairness of our democratic processes."). Nonetheless, on November 7, 2006, Michigan voters approved Proposal 2, with approximately 57.9% of voters favoring it. *See* State Proposal - 06-2: Constitutional Amendment: Ban Affirmative Action Programs, at http://miboecfr.nictusa.com/election/results/06GEN/90000002.html (last visited Aug. 11, 2007). After its approval, Proposal 2 was scheduled to go into effect on December 23, 2006. *See* Mich. Const. art. 12, § 2.

The day after the election, however, on November 8, the Coalition to Defend Affirmative Action, Integration and Immigrant Rights, and Fight for Equality By Any Means Necessary, along with other organizations and individuals (collectively, the "Plaintiffs"), filed suit in the Eastern District of Michigan against Governor Granholm and the Universities, seeking a declaratory judgment that the amendment was invalid and a permanent injunction against its enforcement. "In their amended complaint, [P]laintiffs contended that Proposal 2 violates two federal constitutional provisions (the First and Fourteenth Amendments), three federal civil rights statutes (Title VI, Title

---

[1] The district court similarly denied the City of Lansing's attempt to intervene, and the City of Lansing also appealed. The City of Lansing, however, has since voluntarily dismissed its appeal. *See Coalition to Defend Affirmative Action v. Granholm*, No. 06-2658 (6th Cir. Aug. 8, 2007) (order).

VII[,] and Title IX)[,] and one presidential order (Executive Order 11246)." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 241 (6th Cir. 2006). And on December 11, the Universities filed a cross-claim against Governor Granholm, seeking a preliminary injunction permitting them to continue using their existing admissions and financial-aid policies through the end of the 2007 admissions cycle.

On December 14, three days after the Universities filed their cross-claim, the Michigan Attorney General, Michael Cox, moved to intervene in the lawsuit. That same day, the MCRI and the ACRF jointly moved to intervene as well. The district court ruled on only the Attorney General's motion, granting it that day.

On December 18, TAFM and Eric Russell, a white applicant to the University of Michigan Law School, jointly moved to intervene in the lawsuit. That same day, before the district court issued its ruling on the four pending intervention motions (the MCRI's, the ACRF's, TAFM's, and Eric Russell's), the Plaintiffs in the underlying suit and the three sets of parties to the cross-claim filed a stipulation with the district court, which read in relevant part:

> It is hereby stipulated, by and between the parties that this Court may order as follows:
>
> > (1) that the application of Const[.] 1963, art[.][1], § 26 to the current admissions and financial aid policies of the University parties is enjoined through the end of the current admissions and financial aid cycles and no later than 12:01 a.m. on July 1, 2007, at which time this Stipulated Injunction will expire;
> >
> > (2) that, pursuant to Fed.R.Civ.P. 41(a)(1) and 41(c), the Universities' cross-claim shall be and hereby is dismissed in its entirety, with prejudice only as to the specific injunctive relief requested in the cross-claim [.] . . .

*Coal. to Defend Affirmative Action*, 473 F.3d at 242. On December 19, the district court entered a preliminary injunction, consistent with the parties' stipulation, enjoining the application of Proposal 2 to the Universities' admissions and financial-aid policies until July 1, 2007, and dismissed the Universities' cross-claim. *Coal. to Defend Affirmative Action v. Granholm*, No. 2:06-cv-15024-DML-RSW, slip op. at 3 (E.D. Mich. Dec. 19, 2006) (order).

Having received no response to their motions to intervene, on December 21, Eric Russell and TAFM filed a notice of appeal in this Court, and, the day after that, "they filed in this [C]ourt an 'Emergency Motion for a Stay Pending Appeal' of the district court's preliminary injunction and a Petition for a Writ of Mandamus directing the district court to grant their motion to intervene and to vacate its preliminary injunction." *Coal. to Defend Affirmative Action*, 473 F.3d at 242.

On December 27, 2006, the district court granted Eric Russell's motion to intervene but denied the MCRI's, the ACRF's, and TAFM's motions both as of right and by permission. *Coal. to Defend Affirmative Action v. Granholm*, No. 2:06-cv-15024-DML-RSW (E.D. Mich. Dec. 27, 2006) (order). The next day, Eric Russell amended his "Emergency Motion for a Stay Pending Appeal," and the MCRI, the ACRF, and TAFM all appealed the denials of their motions to intervene.

On December 29, 2006, based on Eric Russell's "Emergency Motion for a Stay Pending Appeal," a panel of this Court stayed the district court's preliminary injunction pending appeal, allowing article I, section 26 of the Michigan Constitution to take immediate effect. *Coal. to Defend Affirmative Action*, 473 F.3d at 253. The merits appeal of the district court's preliminary injunction is still pending before this Court.

## II. ANALYSIS

"This is but one piece of litigation spurred by the Proposal 2 saga." *Operation King's Dream*, 2007 WL 2416815, at *1. Today, we address only the appeals of the district court's order denying intervention as of right and by permission to the MCRI, the ACRF, and TAFM. As discussed more fully below, because none of the proposed intervenors have a substantial legal interest in the subject matter of the case, the district court properly denied their motions for intervention as of right. Further, the district court acted within its discretion when it denied them permissive intervention. Fed. R. Civ. P. 24(b).

### A. Intervention as of Right

Rule 24(a) of the Federal Rules of Civil Procedure entitles certain parties to intervene in a lawsuit as of right:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). We have explained that a proposed intervenor must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest. *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999). Acknowledging that Rule 24 should be "broadly construed in favor of potential intervenors," *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991), the district court nevertheless held that none of the proposed intervenors met any of the four factors.

"We review de novo motions to intervene as of right, except for the timeliness element, which is reviewed for an abuse of discretion." *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 244 (6th Cir. 2007) (citing *Grutter*, 188 F.3d at 98). A district court abuses its discretion only when we are "left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) (citations, alterations, and internal quotation marks omitted).

We begin by addressing whether the proposed intervenors have a substantial legal interest in the litigation. Because we conclude that none do, we need not address the remaining factors. *See, e.g.*, *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) ("[A] failure to meet [any] one of the [four factors] will require that the motion be denied.").

1. *Substantial Legal Interest*

"The proposed intervenors must show that they have a substantial interest in the subject matter of this litigation." *Grutter*, 188 F.3d at 398 (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990)). Although we have noted that this Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right," *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), this does not mean that any articulated interest will do. *See, e.g.*, *Northland Family Planning*, 487 F.3d at 244; *accord Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) ("[T]his does not mean that Rule 24 poses no barrier to intervention at all."). Of course, establishing a substantial legal interest "is necessarily fact-specific." *Miller*, 103 F.3d at 1245.

*a. The MCRI and the ACRF*

According to the MCRI and the ACRF, "they were at the forefront of the protracted campaign to adopt Proposal 2 and are committed to ensuring its constitutionality and timely implementation." The MCRI, headed by Jennifer Gratz, the lead plaintiff in *Gratz v. Bollinger*, 539 U.S. 244 (2003), is registered with the Michigan Secretary of State as the official ballot-question committee for Proposal 2, and was, by all accounts, the driving force behind the controversial solicitation of signatures necessary to place Proposal 2 on the ballot. *See Operation King's Dream*, 2007 WL 2416815, at *2. The ACRF is a public-interest corporation dedicated to eradicating sex and race preferences throughout the United States. Ward Connerly, an ACRF board member, was instrumental in the passage of Proposition 209 in California, which similarly banned "preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." *Coal. for Economic Equity v. Wilson*, 122 F.3d 692, 696 (9th Cir. 1997) (quoting Cal. Const. art 1, § 31(a)). Indeed, by design, Proposal 2 tracks the language of Proposition 209. The MCRI and the ACRF worked together, expending labor and funds, to see that Proposal 2 found its way on Michigan's November 2006 general election ballot and to see that the Michigan voters approved Proposal 2. The district court recognized that "[i]t would not be unreasonable to posit that [Proposal 2] would not have reached the ballot without their efforts." *Coal. to Defend Affirmative Action,* slip op. at 11.

Both the MCRI and the ACRF argue that as groups substantially involved in the process leading to the adoption of the challenged amendment, they have a legal interest in the subject matter of this lawsuit. They rely primarily on our decisions in *Grutter* and *Miller*, as well as several Ninth Circuit decisions that we have cited favorably. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-28 (9th Cir. 1983); *State of Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980). We, however, conclude that our precedent requires a contrary conclusion. Since the district court denied the proposed intervenors motions back in December, we decided *Northland Family Planning*, which is directly on point and controls our disposition.

In *Northland Family Planning*, six health-care facilities and four physicians filed suit against various Michigan officials, seeking to invalidate and enjoin the enforcement of the Legal Birth Definition Act, which "prohibit[ed] the practice colloquially referred to as partial-birth abortions." 487 F.3d at 327–28. Like Proposal 2, the Legal Birth Definition Act became law after a successful proposal by a citizen initiative petition. *Id.* at 327. Prior to the district court holding the Act unconstitutional (which we affirmed), a group called "Stand Together to Oppose Partial-Birth-Abortion" ("STTOP") moved to intervene in the litigation under Federal Rule of Civil Procedure 24(a) and (b). *Id.* at 328. Similar to the MCRI and the ACRF, "STTOP is a ballot-question committee, which was formed to promote the passage and continued viability of the Legal Birth

Definition Act." *Id*. at 328, 344. The district court denied STTOP's motion to intervene, and we affirmed. *Id*. at 343–46.

In affirming the denial of STTOP's motion to intervene, we held that an organization involved in the process leading to the adoption of a challenged law, does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of that already-enacted law, unless the challenged law regulates the organization or its members. *Id*. In so holding, we drew a distinction between cases involving challenges "to the *procedure* required to pass a particular rule, as opposed to the government's subsequent *enforcement* of the rule after its enactment." *Id*. at 345 (second emphasis added). In drawing this distinction, we explained that "the public at large—including public interest groups—has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process." *Id*. "On the other hand," we further explained, "in a challenge to the constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government, and the public's legal interest in the legislative process becomes less relevant." *Id*.; *accord Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 316 (6th Cir. 2005) (affirming the denial of a motion to intervene as of right by a committee that existed to support the passage of a local referendum to amend a zoning ordinance). Thus, had STTOP sought to intervene in a suit challenging the legislative process by which the statute was enacted, then it likely would have had a substantial legal interest in the lawsuit due to its involvement in the passage of the statute. *Northland Family Planning*, 487 F.3d at 345–46. But, after that statute's enactment, STTOP's interest in a suit challenging the enforcement of the statute became insubstantial "due to the state's responsibilities in enforcing and defending it as it is written." *Id*. at 346.

Like STTOP's relationship to the Legal Birth Definition Act, the MCRI was created and continues to exist for the purpose of passing and upholding Proposal 2. *See id*. at 345. The ACRF's goals are, of course, more national, but for the purposes of this case, its relationship to Proposal 2 and interest in the underlying litigation is identical to the MCRI's. That is, like STTOP, their "legal interest can be said to be limited to the passage of [Proposal 2] rather than the state's subsequent implementation and enforcement of it." *Id*. No doubt, each group was instrumental in Proposal 2's path to the ballot and ultimate approval. Their interest in seeing Proposal 2 enforced, however, "is greatly diminished due to the state's responsibilities in enforcing and defending [Proposal 2] as written." *Id*. at 346. Therefore, *Northland Family Planning* compels us to hold that the MCRI's and the ACRF's status as organizations involved in the process leading to the adoption of Proposal 2 is insufficient to provide them with a substantial legal interest in a lawsuit challenging the validity of those portions of Michigan's constitution amended by Proposal 2.

This is not to say that all organizations that advocate for the passage of a law lack a substantial legal interest in a suit challenging the government's subsequent enforcement of that law. Indeed, we have held that where a group is "regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted." *Id*. at 345; *accord, e.g.*, *Grutter*, 188 F.3d at 401 (holding that proposed intervenors, who were applicants to the University of Michigan, had a substantial legal interest in the school's admissions process); *Miller*, 103 F.3d at 1247 (holding that the Michigan Chamber of Commerce had a substantial legal interest where it was regulated by at least three of the four statutory provisions challenged by plaintiffs). Where, however, an organization has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that the organization supports—and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial. *See Northland Family Planning*, 487 F.3d at 346 (explaining that an organization's interest pertaining only to enforceability of a statute in general is not cognizable as a substantial legal interest without the statute also regulating the organization or its members).

Here, the MCRI and the ACRF have only a general ideological interest in seeing that Michigan enforces Proposal 2. Each group asserts that its mission to enforce civil-rights laws at all levels of government will be impeded if not granted intervention. To be sure, neither the MCRI nor the ACRF maintains that it or its members are specifically regulated by those portions of Michigan's constitution amended by Proposal 2. The most they claim is that Proposal 2 naturally affects them because each group has at least a few members that are Michigan residents. This, however, amounts to only a generic interest shared by the entire Michigan citizenry. An "interest so generalized will not support a claim for intervention as of right." *Miller*, 103 F.3d at 1246 (quoting and citing with approval *Athens Lumber Co. v. Federal Election Comm'n*, 690 F.2d 1364 (11th Cir.1982)). Thus, the MCRI's and the ACRF's cognizable legal interests extend only to suits challenging the legislative process by which Proposal 2 was approved. At this point, the MCRI's and the ACRF's interest in the underlying litigation "simply pertains to the enforceability of [Proposal 2] in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right."[2] *Northland Family Planning*, 487 F.3d at 346. As we aptly explained in *Northland Family Planning*, "[w]ithout these sorts of limitations of the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Id*.

The MCRI and the ACRF point out, however, that in *Grutter* we reversed a district court's denial of intervention as of right to the Citizens for Affirmative Action's Preservation ("CAAP"), "a nonprofit organization whose stated mission was to preserve the opportunities in higher education for African-American and Latino/a students in Michigan." 188 F.3d at 397. In *Grutter*, we held that CAAP had a substantial legal interest in a lawsuit challenging the constitutionality of the University of Michigan's race-conscience admissions policy. *Id*. at 398–99. The MCRI and the ACRF contend that CAAP, like them, had only an ideological interest in the lawsuit, and because CAAP was granted intervention as of right, they should be too.

The MCRI and the ACRF misidentify CAAP's interest in *Grutter*. Although CAAP certainly had a general ideological aversion to the elimination of the University of Michigan's race-conscience admissions policy, its members were also directly affected by the challenged policy. At the time of the litigation, CAAP was a coalition consisting of minority students and civil-rights groups, among others, premised on preserving affirmative action in higher education. Indeed, consistent with the makeup of its members, the district court treated CAAP's interests as identical to the proposed minority-student intervenors in that lawsuit, who, like Eric Russell, no doubt had a substantial legal interest in the litigation. *See Gratz v. Bollinger*, 183 F.R.D. 209, 212 n.4 (E.D. Mich. 1998), *rev'd by Grutter*, 188 F.3d 394 ("[I]t would appear that the proposed student intervenors and [CAAP] share the same interest in the preservation of race as a factor in determining admissions. . . . [T]he Court will discuss the interests of both groups together." (internal citation and quotation marks omitted)). Moreover, CAAP was clear in its intervention motion that its members would be directly affected by the outcome of the litigation. *See id*. ("CAAP asserts that its membership consists of individuals, some of whom are parents or grandparents of prospective African-American and Latino students in the State of Michigan."). Consistent with this, in *Grutter*, we held that CAAP, by virtue of its minority members, "enunciated a specific interest in the subject

_____

   [2] The dissent attempts to differentiate a citizen-initiated legislative enactment from a citizen-initiated amendment to a state's constitution, arguing that a public interest group may have a substantial legal interest in the latter's enforcement. Dissent Op. at 3–4. We are not persuaded by this razor-thin distinction. Regardless how a law came into being, the government is, for the most part, entrusted with enforcing it. Thus, as we stated in *Northland Family Planning*, the public's legal interest does not extend to suits challenging the enforceability of an already-enacted law. 487 F.3d at 345. So, where, as here, a public interest group has only an ideological stake in the litigation, it too cannot be said to have a substantial legal interest in the law's enforcement.

matter of th[e] case, namely [its] interest in gaining admission to the University of Michigan . . . ." 188 F.3d at 399. Here, the MCRI and the ACRF have made no such specific "enunciation."

Thus, we hold that the MCRI and the ACRF lack a substantial legal interest in the outcome of this case and affirm the district court's denial of their joint motion to intervene as of right. Accordingly, as mentioned, we need not address the remaining intervention-as-of-right elements.

### b. TAFM

TAFM's contention that it is entitled to intervene as of right is even less compelling. We have little trouble concluding that TAFM is without a substantial legal interest in the outcome of this case. TAFM took no position in favor or against Proposal 2 before, during, or after the November 2006 election, and instead sought only to "promote an educated decision on the question by Michigan citizens through civil and informed discourse." By all accounts, neither TAFM nor its members are regulated by the challenged constitutional amendment. At best, TAFM has only an ideological interest in seeing that Proposal 2 is enforced. As discussed above, consistent with our holding in *Northland Family Planning*, this alone does not constitute a substantial legal interest. *See* 487 F.3d at 346. Therefore, the district court also properly denied TAFM's motion to intervene as of right.

## B. Permissive Intervention

Under Rule 24(b) of the Federal Rules of Civil Procedure, a district court may grant intervention to certain interested parties:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). "The denial of permissive intervention should be reversed only for clear abuse of discretion by the trial judge." *Purnell*, 925 F.2d at 951 (citing *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir.1987)).

In denying the proposed intervenors permissive intervention, the district court explained that, "in cases of this importance, [the district courts] are mere way stations on the judicial road to resolution by courts beyond," and that granting intervention to the proposed intervenors "will inhibit, not promote, a prompt resolution . . . ." *Coal. to Defend Affirmative Action,* slip op. at 16. The district court expressed further concern that the proposed intervenors would "seek to file more claims, amend pleadings even further, and inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings." *Id.* This, coupled with the district court's conclusions that the proposed intervenors lacked a substantial legal interest in the lawsuit, and that the proposed intervenors were adequately represented by existing parties, was a sufficient analysis of the relevant criteria required by Rule 24(b). We cannot say that we are "left with a definite and firm conviction," *Paschal*, 295 F.3d at 576, that the district court acted outside its discretion when it denied permissive intervention to the MCRI, the ACRF, and TAFM. *Cf. Miller*, 103 F.3d at 1248 ("[The district court must] provide enough of an explanation for its decision to enable this court to conduct meaningful review. It is insufficient merely to quote the rule and to state the result.").

### III. CONCLUSION

For these reasons, we **AFFIRM**.

---

### CONCURRING IN PART, DISSENTING IN PART

---

KENNEDY, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's disposition with regard to appellant TAFM. I cannot, however, agree that *Northland Family Planning Clinic v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007), "compels us to hold that the MCRI's and the ACRF's status . . . is insufficient to provide them with a substantial legal interest" in this case. Maj. Op., *ante* at 6. The majority relies on that opinion to avoid clear prior holdings from both our circuit and the Ninth Circuit (whose holdings we had previously adopted). Therefore, because I conclude that MCRI and ACRF have a substantial legal interest (and easily meet the other Rule 24(a) factors), I dissent.

### I. Substantial Legal Interest

The majority relies almost solely on *Northland Family Planning*; indeed, it concludes that case "compels" its holding here. Maj. Op. at 6. *Northland Family Planning* is distinguishable because (1) the challenged state law in that case was enacted by the legislature, rather than by the citizens through constitutional amendment as here, and (2) the groups here have raised reasons why they cannot rely on the office of the Michigan Attorney General to vigorously advocate the constitutionality of Proposal 2.

At the outset, however, I would note that the majority can only rely on *Northland Family Planning* because that case fundamentally altered the Rule 24(a) landscape. Prior precedent was consistent in holding that "interest" was to be construed liberally and "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245, 1247 (6th Cir. 1997). While *Northland Family Planning* carefully distinguished our and some of the Ninth Circuit's prior holdings on their facts, it ignored the basis for those holdings.[1]

In *Miller* we cited with approval a Ninth Circuit rule that "a public interest group that is involved in the process leading to adoption of legislation has a cognizable interest in defending that legislation." *Id.* That rule found its genesis in a case that cannot be distinguished from *Northland Family Planning*. In *Washington State Bldg. and Const. Trades Council, AFL-CIO v. Spellman*, a voter approved initiative "prohibit[ed] the transportation and storage within [the state] of radioactive waste produced outside the state." 684 F.2d 627, 629 (9th Cir. 1982). The legislature of the state subsequently enacted legislation pursuant to the initiative. In a lawsuit against the state challenging the constitutionality of the statute, the citizen-group sponsor of the legislation moved to intervene, but the district court denied its motion. The Ninth Circuit reversed the district court and held that the appellant, "as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a)." *Id.* at 630. The public interest group was not regulated by

---

[1] In addition, the intervention discussion may well be dicta. The district court in *Northland Family Planning* denied the State of Michigan's motion to dismiss and ruled that the state statute was unconstitutional. In the same order, it denied the public interest group's motion to intervene as a defendant. We affirmed the ruling that the statute was unconstitutional, granting summary judgment to the plaintiffs. We also noted that, "[t]he finality of the summary judgment decision clearly has potential to render moot [the group's] motion to intervene." 487 F.3d at 344. Nonetheless, we addressed the question. Because the grant of summary judgment to plaintiffs ended the case on the merits, there was no need to determine whether the public interest group had the right to intervene. For this reason, future panels may reject the Rule 24(a) discussion in *Northland Family Planning*. Indeed, without that foundation, the decided break with prior precedent may very well convince subsequent panels to conclude that this case too is anomalous, and they need not follow it when reflecting on the body of Rule 24(a) case law in this circuit.

the initiative, which the majority concludes is critical here, Maj. Op. *ante* at 6-7, nor was it involved in serial litigation concerning the initiative, which *Northland Family Planning* found was important in *Miller*. 487 F.3d at 344-45. Nonetheless, and despite consistent citation with approval to the line of Ninth Circuit cases beginning with *Spellman*, a panel of this court reached the opposite conclusion in *Northland Family Planning*.

There are good reasons to conclude, however, that the sponsors of a constitutional amendment, like Proposal 2 in this case, have a greater interest in defending the measure than the group that sought to intervene in *Northland Family Planning*.[2]  There we noted that "in a challenge to the constitutionality of an already enacted statute . . . the public interest in its enforceability is entrusted for the most part to the government, and the public's legal interest in the *legislative* process becomes less relevant." 487 F.3d at 345 (emphasis mine). That insight rests on a simple presumption: When the government has passed a law, it can be trusted to administer it. When, as here, however, government did *not* pass the law, but rather the citizens of the state amended their constitution in a general election (arguably because their elected officials would not accede to their will), that presumption does not arise.

The procedural history of this case confirms that the plaintiffs have a basis for their fear that the office of the Attorney General cannot be relied on to defend "the public interest in [this amendment's] enforceability." *Id.*  As the majority notes, the Attorney General and the Governor have already compromised with the plaintiffs and the cross-claimants in this case and stipulated to an injunction that, we have previously found, had no basis in federal law. Maj. Op. *ante* at 3-4; *Coalition v. Granholm*, 473 F.3d 237, 244-247 (6th Cir. 2006). In addition the "government" in this case is divided; prior to the 2006 general election, the Attorney General publicly supported Proposal 2 and the Governor opposed it. Therefore, while the Attorney General takes the view in his filings that the amendment does not violate the federal Constitution, the Governor has indicated a possibility that she might conclude otherwise. Indeed, although she was sued in her official capacity only, she has requested that the Attorney General put a conflict wall in place in his office to ensure that her position is represented in federal court without the influence of the Attorney General. Governor's Br. at 4-5, No. 06-2656. The Governor and the Attorney General have both filed answers in the district court and, by all appearances, intend to litigate the matter separately.

Therefore, the State of Michigan (the only appropriate defendant in an action to declare a measure adopted in a general election unconstitutional) does not appear to be a party in this case. Instead, Attorney General Cox and Governor Granholm are both either named defendants or, in the case of Attorney General Cox, an intervening defendant because they have recognized potential for conflicting views (and thus different litigation strategies) between them. It is also unclear what the status of Governor Granholm, as a party, actually is. After Attorney General Cox intervened, she should no longer have been in the case, yet she has continued to file briefs here in support of the denial of intervention, as well as pleadings and briefs in the court below.

---

[2] An elaboration of the facts of *Northland Family Planning* and the Michigan initiative and constitutional amendment procedures is in order: In Michigan, a group can propose laws to the legislature through an initiative.
> To invoke the initiative . . . petitions signed by a number of registered electors, not less than eight percent  . . . of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required. . . . Any law proposed by initiative petition shall be either enacted or rejected by the legislature without change or amendment . . .. If any law so proposed is not enacted by the legislature within 40 days, [it] shall [be] submit[ted] to the people for approval or rejection at the next general election.

Mich. Const. Art. II § 9. In *Northland Family Planning*, the proposed intervenor had proposed the challenged law to the legislature through an initiative and the legislature had enacted the law. In contrast, in the instant case, a majority Michigan voters approved an amendment to the Michigan Constitution in a general election pursuant to Mich. Const. Art. 12 § 2.

All of this reinforces concern with entrusting the "public interest in enforceability" of a general election, voter-approved measure to elected officials. As the example of the Governor proves, there are cases in which the elected officials of a state will disagree with the majority of the voting population on a particular point of public policy. Therefore, when the voters demonstrate their preference on that point of public policy through the constitutional amendment process, it follows that *some* representative of the voters has a "substantial interest" in defending that position: I agree with the Ninth Circuit's conclusion in *Spellman* that the sponsor of the measure should be that representative.

The point, therefore, is simply that measures approved by the voting public in a general election are different from legislative acts. This point does not depend on the policy preferences of particular elected officials. Rather, the possibility of conflict creates a substantial interest. It does not matter in the substantial interest inquiry that the Attorney General supported Proposal 2 before the election. That fact will be weighed in consideration of the last factor, namely whether a party already in the case will sufficiently represent the position of the proposed intervenor. I turn to that factor, as well as the other remaining ones, presently.

## II. Remaining factors

Because it concludes that MCRI and ACRF do not have a substantial legal interest in this case, the majority does not address the remaining factors. I would find, however, that (1) the district court abused its discretion when it determined that the motion to intervene was not timely, (2) the ability of MCRI and ACRF to protect its substantial legal interest may be impaired in the absence of intervention, and (3) that the Attorney General, as well as the other parties in the case, might not adequately represent that interest.

First, the parties' motion to intervene was timely. While it is true that appellants must have known about the litigation shortly after it was filed, it is equally clear that the litigation had not progressed by the time they moved to intervene. "The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important . . . circumstances" to consider. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000). The Attorney General stated in his motion to intervene, filed the very same day as appellants' and found to be timely, that "intervention will in no way unduly delay or prejudice the adjudication of the rights of the original parties since this suit is in its initial phase." Attorney General's Mot. Interv. ¶ 17. Appellants waited only a week after service on the Governor and only one day after notice of that service was filed in the district court before filing their motion. No discovery had occurred and no orders had issued. None of the traditional hallmarks of a progressing litigation yet existed.

Second, to dispose of the present case without allowing the intervention of the MCRI and ACRF would compromise their ability to protect their interests, as an adverse ruling would threaten the viability of the constitutional amendment that these groups supported. To satisfy this element, "a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied[,]" a "burden [that] is minimal." *Miller*, 103 F.3d at 1247 (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)) (emphasis mine). As such, the appellants' showing that an adverse determination in this case has the potential to hinder their ability to protect their interest in eliminating race-based preferences is sufficient to support intervention.

Third, the Attorney General *might* not adequately represent the appellants' interest in this matter. The threshold for this requirement is again low; appellants need not show that representation *won't* be inadequate, only that the *potential* exists that the Attorney General will not make all of their arguments. *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). The procedural history of this case indicates that this

potentiality exists. While the opponents of the motion have argued that the stipulated injunction was merely a litigation strategy rather than a different theory of the case, the fact that this court overturned the stipulated injunction on appeal indicates that a more zealous litigation approach could significantly alter the enforcement and ultimately the interpretation of this constitutional amendment. In addition, the conflict wall set up across the Attorney General's office at the request of the Governor further indicates that different interpretations of this provision and its interaction with federal constitutional and statutory law are possible; the appellants' interpretation could be more expansive than that of the existing parties.

*   *   *

In order to ensure vigorous advocacy so that we do not intrude on states' interests in the constitutionality of their own laws, I would hold that sponsors of voter initiatives may intervene as of right to defend the measures they sponsored. Therefore, I would reverse the district court with regard to appellants MCRI and ACRF and remand with instructions to allow those parties to intervene pursuant to Rule 24(a).