NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0191n.06

No. 12-4079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>

SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION; INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1005; INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 863; OHIO ORGANIZING COLLABORATIVE; UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 75; UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880; UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 1059,

     Plaintiffs-Appellees,

v.

JON HUSTED,

     Defendant,

and

ROBERTA VAN ATTA, EMILIE ILLSON, THOMAS KELLY,

     Intervenors-Appellants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

</td></tr>
</table>

FILED
*Feb 20, 2013*
DEBORAH S. HUNT, Clerk

Before:  GIBBONS and COOK, Circuit Judges; ROSENTHAL, District Judge[*]

PER CURIAM.  A bipartisan group of Ohio voters appeals the district court's denial of permissive intervention in consolidated cases challenging the constitutionality of Ohio's provisional ballot system.  After the Secretary of State declined to appeal a portion of the district court's judgment on the merits of the constitutional claims, these voters and others moved to intervene or appear as amici on appeal.  We heard the voters as amici in appeal 12-4069 and affirmed the district court's judgment in part. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 604 (6th Cir. 2012). We have since reviewed other aspects of this litigation, portions of which remain pending. *See Ne. Ohio Coal. for Homeless v. Husted*, No. 12-4354, slip op. (Nov. 16, 2012); *SEIU v. Husted*, 698 F.3d 341 (6th Cir. 2012).  For this appeal, however, we need only decide the voters' challenge to the district court's denial of permissive intervention.  We AFFIRM.

I.

The record reflects that the voters filed their motion to intervene on July 27, 2012, the last business day before the July 30, 2012 preliminary injunction hearing on the merits of the constitutional claims.  The voters justified their delay by pointing to plaintiffs' amended complaint filed three days earlier.  According to the voters, the amended complaint's removal of the local

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

boards of election necessitated their intervention to provide a "local perspective." After hearing argument on the motion, the district court denied intervention, deeming the voters' motion untimely and their legal interests adequately represented by the Secretary of State. The voters challenge both conclusions.

## II.

Federal Rule of Civil Procedure 24(b) governs permissive intervention, providing that a court, "[o]n timely motion," may grant intervention to anyone who "(B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising [this] discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). We review the denial of permissive intervention for a "clear abuse of discretion," reversing only if "left with the definite and firm conviction" that the district court committed a clear error of judgment. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007) (citations omitted).

Courts consider the following factors in assessing the timeliness of an intervention motion:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 591 (6th Cir. 2001). The district court inquired about each factor during oral argument and adequately explained its denial of intervention.

As the district court explained, the voters waited five weeks after the filing of the complaint to seek intervention. By that time, more than two weeks had passed since the parties' completion of briefing on the complex motion for preliminary injunction and the court's scheduling of a hearing. Furthermore, two years had passed, without intervention by these voters, since a consent decree in a related case ordered the same remedy these voters claim would dilute their votes—the counting of the wrong-precinct provisional ballots. (R. 69, Hr'g Tr. at 91 (noting that the consent decree could have triggered the voters' vote-dilution concerns); *see also* No. 2:06-cv-896, R. 210, Consent Decree ¶ 5(b)(v), (vi).) Noting the approaching November election, the court held that "[a]llowing the applicants' intervention will prejudice the existing parties and 'will inhibit, not promote, a prompt resolution.'" *SEIU v. Husted*, Nos. 2:12–CV–562, 2:06–CV–896, 2012 WL 3643064, at *5–6 (S.D. Ohio Aug. 27, 2012) (quoting *Coal. to Defend Affirmative Action*, 501 F.3d at 784). (*See also* R. 69, Hr'g Tr. at 91–92 ("Here, we are definitely in a position where we have to act expeditiously in order for this matter to wind its way through the court of appeals in time for all of the local boards of election to know what the rules of engagement will be for the November election.").)

Neither the voters' vague interest in a "local perspective" nor the recent removal of the boards of election justified the delay. Indeed, counsel for the voters admitted during the injunction hearing that their real interest in the litigation—preventing vote dilution—"w[as] extant from the inception of the . . . litigation"—i.e., more than a month before the attempted intervention. (*See* R. 69, Hr'g Tr. at 5–6.) And counsel offered nothing more than an unspecified "fe[eling]" that the recently removed boards of election "were . . . more closely aligned with [his] clients' rights and . . . view of the case than . . . the [Secretary of State]." He did not identify specific arguments or evidence that would be abandoned as a result of dismissing the boards of election, and he admitted that the Secretary of State would act to prevent vote dilution. (*See id.* at 6–7; *see also id.* at 5 (admitting that "it was perspective but not [the stated interest in the litigation] that changed" with the dismissal of the boards of election).)[1]

Nevertheless, the voters respond that our decision in *Jansen v. City of Cincinnati* required allowing intervention here. *See* 904 F.2d 336, 344 (6th Cir. 1990) (reversing denial of intervention, finding motion timely and intervention essential to protecting the applicants' interests). Not so. First, we note that *Jansen* addressed intervention as of right under Federal Rule of Civil Procedure 24(a), and thus devoted significant, de novo consideration to the proposed intervenor's

---

[1]When pushed on the local perspective argument, counsel offered the alternative justification that these voters potentially faced a "unique" injury arising from plaintiffs' proposed remedy: vote dilution caused by additional poll-worker error. (R. 69, Hr'g Tr. at 6.) Counsel did not explain how the election boards, but not the Secretary of State, shared the voters' interest in preventing this "unique" injury.

"significant legal interest in . . . the pending litigation" and the parties' ability to "adequately protect

the proposed intervenors' interest." *Id.* at 340, 341–44. Second, the different circumstances at issue

in *Jansen* preclude application of its timeliness ruling here.

In *Jansen*, we found that the district court abused its discretion in deeming an intervention

motion untimely when the applicants filed the motion approximately two weeks after the city

responded to the plaintiffs' summary judgment motion. The city's failure to address issues relating

to a consent decree specifically "alerted the proposed intervenors that their interest was not being

adequately represented." *Id*. at 341. It is also notable that several months remained in the discovery

period at the time of the motion. Viewed in this context, the "short period d[id] not support a finding

of undue delay." *Id.*

By comparison, the delay here posed a significant risk of upsetting the expedited schedule

necessitated by the upcoming election. As noted above, the voters filed their motion on the last

business day before the injunction hearing, weeks after the parties' pleadings and briefing, and more

than two years after the consent decree in a related case ordered relief similar to that sought by these

plaintiffs. Other than a vague "local perspective" shared with the recently dismissed election boards,

the voters offered no explanation for their delay.

The voters also argue that courts routinely allow intervention in election law cases. *See, e.g.*,

*Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 570 n.2 (6th Cir. 2004)

(acknowledging that the district court allowed individual voters to intervene the week before

judgment);[2] *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 n.3 (11th Cir. 1999) (referring to the intervention of voters as "normal practice" in reapportionment disputes). This is indisputably so, and for good reason— the right to vote "is regarded as a fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). Still, Rule 24(b) vests district courts with discretion to allow timely intervention motions, upon consideration of delay and prejudice. Fed. R. Civ. P. 24(b)(1), (3). Under these circumstances, the district court could reasonably conclude that intervention would cause undue delay. We therefore cannot say with "definite and firm conviction" that the district court abused its discretion. *Coal. to Defend Affirmative Action*, 501 F.3d at 784 (affirming denial of permissive intervention).[3]

III.

For the above reasons, we AFFIRM.

---

[2]We note that the voters in *Sandusky* sought intervention seven days after the complaint was filed. 387 F.3d at 570 & n.2.

[3]The voters further argue that the Secretary of State's decision not to appeal a portion of the district court's merits judgment further justifies their intervention in this case. Yet this argument in favor of intervention on appeal does not bear on the district court's denial of permissive intervention. As previously mentioned, we granted the voters' alternative request to appear as amici, a remedy agreed to by all parties.