**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0020n.06

No. 17-1362

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BAY MILLS INDIAN COMMUNITY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICK SNYDER, Governor, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendant-Appellee, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| SAGINAW CHIPPEWA INDIAN TRIBE OF | ) | |
| MICHIGAN, | ) | |
| | ) | |
| Proposed Intervenor-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: CLAY, GIBBONS, and BUSH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** The Saginaw Chippewa Indian Tribe of Michigan ("Saginaw") appeals the district court's denial of its motion for permissive intervention under Federal Rule of Civil Procedure 24(b). Saginaw alleges that the district court erred in finding that it did not share a common question of law or fact with the main action. Saginaw further claims that the district court abused its discretion in denying permissive intervention because the district court incorrectly imposed requirements necessary for mandatory intervention onto its permissive intervention analysis.

We hold that the district court did not err in denying Saginaw's motion for permissive intervention. Even if there was a common question of law or fact, Saginaw's motion for

1

intervention was not timely and the district court did not abuse its discretion. We therefore affirm.

I.

Saginaw is seeking to intervene in a dispute between the Bay Mills Indian Community ("Bay Mills") and the state of Michigan (represented by its governor, Rick Snyder). The dispute arose in 2010 when Bay Mills began operating a casino in Vanderbilt, Michigan. *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2029 (2014). Michigan sued Bay Mills one month after the casino opened, alleging that the casino violated Bay Mills's compact with the State and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq. Id.* Under both the state compact and IGRA, Bay Mills was only permitted to open casinos on "Indian lands." *Id.* Bay Mills defended that the Vanderbilt land was "Indian land" because it was purchased with accrued interest from a federal appropriation under the Michigan Indian Land Claims Settlement Act ("MILCSA"), which states that any land acquired with the appropriated funds "shall be held as Indian lands are held." 111 Stat. 2652 § 107(a)(3); *Bay Mills Indian Cmty.*, 134 S. Ct. at 2029.

The district court issued a preliminary injunction against Bay Mills, but this Circuit reversed, holding that tribal sovereign immunity barred the state from suing Bay Mills. *Bay Mills Indian Cmty.*, 134 S. Ct. at 2029–30. Instead, Michigan could only proceed against individual defendants. *Id.* The Supreme Court granted certiorari and affirmed this Circuit's finding of sovereign immunity. *Id.* at 2039. In accordance with that decision, the case was remanded to the district court and Michigan amended its complaint to drop the claims against Bay Mills and to plead claims against the current members of the Bay Mills Executive Council and Bay Mills Gaming Commission. The case is now known informally as *Glezen*, after the first defendant named on the pleadings after remand.

Concurrently to *Glezen*, in 2011, Bay Mills filed another lawsuit—the instant case—seeking a declaratory judgment that the Vanderbilt land was "Indian land" and that the casino was not in violation of the state compact or IGRA. This declaratory judgment suit was stayed pending the *Glezen* decision. In 2015, after the remand, Michigan and Bay Mills entered into stipulations to coordinate both *Glezen* and this case. In part, the stipulations required Michigan to file a dispositive motion raising the sole issue of whether lands purchased with funds from the MILCSA were "Indian lands," before proceeding on any other dispositive motions or discovery.

A day before Michigan was due to file its dispositive motion on the MILCSA issue, Saginaw moved for both mandatory and permissive intervention as a defendant. The district court denied the motion. It found that Saginaw did not have a sufficient legal interest in the suit to warrant mandatory intervention, nor did Saginaw have the common question of law or fact necessary for permissive intervention. Saginaw now appeals only the denial of permissive intervention under Fed. R. Civ. Pro. 24(b). Both Michigan and Bay Mills oppose Saginaw's proposed intervention.

## II.

We review the district court's denial of a motion for permissive intervention for abuse of discretion. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007). Under this deferential standard, the court should "revers[e] only if 'left with the definite and firm conviction' that the district court committed a clear error of judgment." *Serv. Emps. Int'l Union Local 1 v. Husted*, 515 F. App'x 539, 541 (6th Cir. 2013) (quoting *Granholm*, 501 F.3d at 784).

A district court has discretion to grant permissive intervention on a timely motion to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, the district court must also

"consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. 24(b)(3).

Here, Saginaw argues that it does share a common question with the dispute between Bay Mills and Michigan. It mainly relies on the fact that its responses to Bay Mills's amended complaint substantially mirror the positions advanced by Michigan. However, Saginaw cites no precedent to support the idea that pleading similar responses necessarily indicates a common question of law or fact. Indeed, if that were true, any party wishing to intervene to support one side of a lawsuit could simply reiterate the pleadings of that side and thus meet the "common question" requirement. Permissive intervention cannot be interpreted so broadly.[1]

Saginaw further argues that this case involves an interpretation of IGRA, which governs all Indian tribes, including Saginaw; therefore, this IGRA issue fulfills the common question requirement. However, the district court correctly held that the real issue in this case does not involve interpreting IGRA, but rather the MILCSA. IGRA provides a framework for regulating gambling activity on "Indian lands." *Bay Mills Indian Cmty.*, 134 S. Ct. at 2028. Pursuant to IGRA, Bay Mills and Michigan entered into a compact in 1993, which allowed Bay Mills to operate casinos on "Indian lands." *Id.* at 2029.

Separately, under the MILCSA, Congress appropriated certain funds to go into a "land trust" for Bay Mills, and earnings from that trust were to be used to improve or purchase property. *Id.* The MILCSA also stated that any land so acquired "shall be held as Indian lands are held." 111 Stat. 2652 § 107(a)(3). Based on this MILCSA language, Bay Mills and Michigan contest whether the Vanderbilt land, which was purchased with MILCSA funds, constitutes "Indian land." Thus, as the district court correctly noted, the court is actually

---

[1] An amicus brief would have been more appropriate in this situation and, in fact, Governor Snyder suggested that Saginaw file an amicus brief in this case, but it did not do so.

interpreting MILCSA, not IGRA. Since Saginaw is not a party to the MILCSA, nor to the Bay Mills-Michigan compact, it does not share any common questions with this case.

Saginaw points out that since Bay Mills is arguing that the Vanderbilt land is "Indian land," the district court's decision will inevitably impact what "Indian land" means under IGRA. However, the case is mainly focused on the language in MILCSA, not IGRA, and any effect on the interpretation of IGRA would be a mere side effect. Allowing this to fulfill the "common question" requirement would mean that any Indian tribe would be able to intervene whenever IGRA is implicated in any way—or, to analogize, it would allow any employer to intervene in any Title VII suit. Such an interpretation would be much too broad. Accordingly, the district court was correct to find that Saginaw does not meet the "common question" requirement for permissive intervention because it is not a party to MILCSA.

## III.

Additionally, Saginaw's motion for intervention was not timely. When considering whether a motion to intervene is timely, the court should consider all the circumstances, including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Here, these factors point to a finding of untimeliness. First, Saginaw filed its motion to intervene more than five years after this suit was initiated in 2011. Second, Saginaw admits that it has known about this litigation since the case began. And third, this dispute has been to the Supreme Court and back, and there has been much discovery and negotiation between the original parties.

While Saginaw is correct is noting that there is no absolute amount of time that makes a motion untimely, *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000), and that a court can still allow intervention even when a case is well advanced, *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881–82 (6th Cir. 2000), the factors here indicate that Saginaw should have filed a motion to intervene earlier. Accordingly, we hold that Saginaw's motion to intervene was untimely.

IV.

Lastly, even if Saginaw's motion was timely and did share a common question with the main litigation, the district court still has discretion to decide whether or not to grant permissive intervention. Here, the court was reasonable to conclude that the circumstances of this case did not warrant an intervention by Saginaw. The district court pointed out that Michigan has filed a summary judgment motion representing Saginaw's view that the Vanderbilt land is not "Indian land" simply because it was purchased with MILCSA funds. The fact that Saginaw's position is being represented counsels against granting permissive intervention. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996.) Additionally, the long history of the dispute and the extensive litigation that has already occurred between Bay Mills and Michigan also suggest that intervention would not be appropriate.

Saginaw argues that the district court imposed the requirements of mandatory intervention in its analysis of permissive intervention. However, the district court did not do so; instead it merely considered some of the mandatory intervention factors when evaluating whether permissive intervention was appropriate in light of all the circumstances. District courts can consider such factors when evaluating permissive intervention motions. *See Granholm*, 501 F.3d at 784 (affirming district court's denial of motion for permissive intervention and

noting that the district court had properly considered the lack of a substantial legal interest and adequate representation by the existing parties). Thus, the district court was well within its discretion to deny Saginaw's motion to intervene.

V.

For the forgoing reasons, we affirm the district court's denial of permissive intervention.